[S. F. No. 8921.   In Bank.—March 4, 1919.]

# SAN FRANCISCO–OAKLAND TERMINAL RAILWAYS (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT — FLAGMAN EMPLOYED BY TWO RAILROAD COMPANIES—RELATIONSHIP OF EMPLOYER AND EMPLOYEE AS TO EACH COMPANY.—Where one railroad carrier engaged indistinguishably in interstate and suburban traffic employed a flagman at a crossing, and another railroad carrier engaged solely in intrastate commerce and operating its road on parallel tracks paid one-half of the monthly salary of such flagman, the flagman acting for both carriers, the relation of employer and employee existed between each carrier and the flagman, within the meaning of the terms as defined in the Workmen's Compensation, Insurance and Safety Act.

[2] ID.—KILLING OF FLAGMAN—JURISDICTION OF COMMISSION—RIGHT TO AWARD COMPENSATION AGAINST INTRASTATE CARRIER.—Where a flagman thus employed was killed by a train of the interstate carrier at a time when a train of the intrastate carrier was also arriving, the jurisdiction of the Industrial Accident Commission to award compensation was not lost as to the intrastate carrier by reason of the federal employer's liability law, which excluded the jurisdiction of the commission to award compensation against the interstate carrier.

[3] ID.—JURISDICTION OF COMMISSION — EXCLUSION BY FEDERAL EMPLOYERS' LIABILITY LAW—EXTENT OF.—The jurisdiction of the Industrial Accident Commission is excluded by the federal employers' liability law only as to such matters as are covered by the act, and necessarily the federal act cannot be held to affect the rights under the state law of an employee of a common carrier by railroad in no

way engaged in interstate commerce, or the rights of his dependents in the event of his death, to obtain compensation under such state law on account of injuries or death occurring in the course of his employment by such carrier, and arising out of such employment.

[4] Id.—Release of Interstate Carrier — Right to Compensation Under State Act.—A written release executed by the surviving wife of a flagman thus employed to the interstate carrier releasing it from all claims and causes of action on account of the death of her husband, is invalid, in so far as any claim under the Workmen's Compensation Act is concerned, where it did not provide for the payment of full compensation in accordance with the provisions of the act, and was never approved by the commission.

PROCEEDING in Certiorari originally commenced in the Supreme Court to annul an award of the Industrial Accident Commission. Affirmed.

The facts are stated in the opinion of the court.

W. H. Smith for Petitioner.

Christopher M. Bradley and James P. Montgomery for Respondents.

ANGELLOTTI, C. J.—This is a proceeding in *certiorari* having for its purpose the annulment of an award in favor of Abigail M. Robinson against petitioner for death benefit and burial expense on account of the death of her husband, Washington L. Robinson, who was killed as the result of an accident occurring in the course of his employment and arising out of his employment as a crossing watchman at the crossing of Shattuck Avenue and Bancroft Way, in the city of Berkeley.

The proceeding before the commission was against both petitioner and the Southern Pacific Company, upon the theory that they were both the employers of deceased. The findings of the commission substantially declare that on January 20, 1918, deceased "was in the service, other than as an independent contractor, jointly of defendants . . . as a flagman at a certain street crossing"; that his duties in said employment were to warn and signal indiscriminately the operators of the trains of both defendants as to vehicles and pedestrians at or approaching said street crossing and to warn and signal pedes-

trians and the drivers of vehicles as to the approach at said crossing of the trains of both defendants; "that at the said time and place, while engaged in rendering service for both of said defendants, the employee sustained an injury, to wit, he was struck accidentally by a passing train of said Southern Pacific Company while engaged in flagging; that such injury arose out, and in the course of, "his joint employment by said defendants," and was proximately caused thereby; "that said injury proximately caused death on the twenty-third day of January, 1918," and "that the earnings of the employee in said employment at said time were forty-five dollars ($45) per month, one-half whereof was paid by each defendant." It was further found that the system of the Southern Pacific Company at said crossing was "at all times engaged indistinguishably in interstate and suburban traffic, and therefore as to said defendant the employee was engaged in interstate commerce," with the result that as to the Southern Pacific Company the commission was without jurisdiction. The award, therefore, was made solely against petitioner.

We construe these findings as sufficiently declaring that at the time of the accident deceased was in the employ of both defendants; that at the time of the accident he was actually engaged in rendering service for both of the defendants, and that his injury arose out of, and in the course of, said employment while rendering such service. They sufficiently show the relation of employer and employee within the meaning of the "Workmen's Compensation, Insurance and Safety Act," (Stats. 1917, p. 831), which defines an employer as one "who has any person in service under any appointment or contract of hire, . . . , express or implied, oral or written, . . . " (section 7), and an employee as "every person in the service of an employer as defined by section seven hereof under any appointment or contract of hire . . . , express or implied, oral or written, . . . " (section 8), as well as under the general law.

It is earnestly urged that the evidence received by the commission fails to furnish any support for a conclusion that the relation of employer and employee existed between petitioner and deceased, or that deceased was injured while engaged in any service for petitioner. The situation in this connection was as follows:

Both petitioner and the Southern Pacific Company operated suburban electric lines to and through parts of Berkeley, the interstate character of the Southern Pacific Company being based on the fact that interstate passengers and freight, as well as United States mail, were carried on its trains. At and near the place of the accident the tracks of both companies are along Shattuck Avenue, a street running in a northerly and southerly direction. Each company has two tracks, and the four are parallel, the two Southern Pacific Company tracks being on the westerly side of the avenue, and there being about 15 feet between the two sets of tracks. These tracks run along Shattuck Avenue, across its intersection with Bancroft Way, and then on along Shattuck Avenue northerly. Just across this intersection, on the northerly side, is a stopping place or station for both systems. The evidence shows very clearly that, acceding to a request of the Berkeley authorities made for the purpose of giving protection to pedestrians and vehicles passing over the tracks of the two companies at certain street crossings, including that of Shattuck Avenue and Bancroft Way, the two companies had entered into an oral understanding several years before under which the Southern Pacific Company was to place crossing watchmen at such crossings, and bill one-half the wages of such watchmen to petitioner. This arrangement had been faithfully complied with from the time it was made up to and including the time of the accident, and the Southern Pacific Company had each month rendered its bill to petitioner for one-half the wages of each man so employed, and petitioner had each month paid such bill. At the time of the accident and for some weeks prior thereto deceased was the crossing watchman so installed at the Shattuck Avenue Bancroft Way crossing. While the two systems of railroad were absolutely separate and distinct, the duties of these watchmen were absolutely the same as to each, and they were so instructed. But they were directly selected and employed by the Southern Pacific Company, were carried on the pay-roll of that company for all of their wages, were directly paid all of their wages by that company, were under the supervision of that company in the performance of their duties, and that company alone exercised directly the power of discharge, though it was admitted that such power would be exercised as to any watchman whose discharge was insisted on by petitioner.

The accident occurred about 5:57 P. M. on January 20, 1918. Trains of both companies going north arrived at the Shattuck Avenue Bancroft Way station about the same time, petitioner's train being a little ahead of the other. Deceased was standing near the west rail of the track of the Southern Pacific Company on which the train of that company approached, facing east, apparently in the discharge of his duties as crossing watchman and apparently looking in the direction of petitioner's train. The evidence is not entirely in accord as to the relative position of the trains at the moment of the accident, but in view of the findings we must consider it in the light most favorable to the claimant. According to some of the evidence, the trains came in practically together, the head of petitioner's train being only about half a car-length ahead going ''into the station,'' and stopped at the same time in that relative position. Deceased was apparently standing too near the Southern Pacific Company track, and was struck by the first car and thus received his injury.

The evidence is in such condition as to fairly warrant a conclusion that at the time of the accident deceased was actually engaged in his duties as crossing watchman with reference to the two trains which were then arriving, and so was actually engaged, as found by the commission, in rendering service, in the course of his employment, for both of the defendants. It is true that there was other evidence tending to show that petitioner's train had arrived earlier than indicated by the evidence above referred to, and that the duties of deceased in connection therewith had ended before the accident, but, upon the whole case, that was a question of fact for the commission, and its finding is conclusive in so far as the courts are concerned.

[1] We are also of the opinion that, upon the facts we have stated, the commission correctly held that deceased was in the employ of both companies, and that, therefore, the relation of employer and employee existed between deceased and petitioner. This appears to us to necessarily be the result of the arrangement between the companies and their course of conduct thereunder. The deceased was engaged to perform his service for both companies and was in reality paid his wages by the two companies, each paying one-half. That he was selected for this service by the Southern Pacific Com-

pany, was placed on its pay-roll as its employee, was under its supervision, direction, and control, and was given his wages by it, was simply the result of the arrangement between the two companies as to the method by which the thing contemplated should be done. In all this, including the contract of employment, the Southern Pacific Company was acting on behalf of petitioner as well as itself, and in no respect as an independent contractor. We cannot see, looking at the substance of the transaction, why petitioner and deceased did not fully measure up to the definitions of employer and employee contained in our "Workmen's Compensation, Insurance and Safety Act." That such is the situation under the general law to which it has been held "we must look" in determining such questions (see *Employers' Liability Assur. Corp.* v. *Industrial Acc. Com.*, 179 Cal. 432, [177 Pac. 273], is fully sustained by such cases as *Vary* v. *Burlington C. R. & M. R. Co.*, 42 Iowa, 246, and *Atlanta Coast Lines R. Co.* v. *Tredway's Admx.*, 120 Va. 735, [93 S. E. 560]. None of the cases cited by petitioner is in point upon such facts as we have in this case.

[2] Although petitioner is not a common carrier by rail engaged in interstate commerce, it is claimed that if deceased was at the time of the accident rendering service for both petitioner and the Southern Pacific Company, which was engaged in interstate commerce, his service as to the latter being of an interstate character, that character must attach to the whole of his service, and thus, in view of the Federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65, [U. S. Comp. Stats., secs. 8657–8665]), exclude the jurisdiction of the state commission, even as to the petitioner, which is not engaged in interstate commerce. This claim loses sight of the fact that the service as to each company, though confused in point of time of rendition, was absolutely separate and distinct in every other way. For one company he was doing one thing and for the other company an entirely different and distinct thing, and his service *for petitioner* had no element of an interstate character. [3] The claim further loses sight of the fact that the jurisdiction of the state commission is excluded by the federal employers' liability law only as to such matters as are covered by the act, and necessarily the federal act cannot be held to affect the rights under

the state law of an employee of a common carrier by railroad in no way engaged in interstate commerce, or the rights of his dependents in the event of his death, to obtain compensation under such state law on account of injuries or death occurring in the course of his employment by such carrier, and arising out of such employment.

[4]    It is suggested, though not argued by petitioner in his briefs, that a release given by the claimant to the Southern Pacific Company had the effect of releasing petitioner.    It appears that prior to the commencement of this proceeding before the commission, the claimant, in consideration of $250 paid her by such company, executed a written release of the company from all claims and causes of action on account of the death of her husband.    This amount was credited by the commission to petitioner in its final award, thereby reducing the full compensation of $1,539 by $250.    The release did not "provide for the payment of full compensation in accordance with the provisions of" the act, and it was never "approved by the commission."    In so far as any claim under the Workmen's Compensation Insurance and Safety Act is concerned, it was therefore invalid (section 27), and it is material only in considering any claim that may be asserted against the Southern Pacific Company under the federal employers' liability law.

No written notice was served on petitioner within thirty days after the injury to Robinson stating name and address of person injured, etc., as required by section 15 of the compensation act.    That section provides, however, "that the failure to give any such notice, . . . shall not be a bar to recovery under this act if it is found as a fact in the proceedings for the collection of the claim that there was no intention to mislead or prejudice the employer in making his defense, and that he was not in fact so misled or prejudiced thereby."    The commission so found in this proceeding.    Section 19 (d) of the act provides that "prejudice to the employer by failure of the employee to give notice, as required by section fifteen," is an affirmative defense, and that "the burden of proof shall rest upon the employer to establish them."    In the light of these provisions it certainly cannot be held that the finding of the commission is without sufficient support in the evidence.

What we have said disposes of all points in the briefs as to which discussion is necessary.

The award is affirmed.

Shaw, J., Melvin, J., Wilbur, J., Lennon, J., Lawlor, J., and Olney, J., concurred.