[Civ. No. 6298. Fifth Dist. Mar. 16, 1983.]

GAYLORD HORNEY, Plaintiff and Appellant, v.
GUY F. ATKINSON COMPANY, Defendant and Respondent.

COUNSEL

Canelo, Hansen & Wilson and Ronald W. Hansen for Plaintiff and Appellant.

Martin, Crabtree, Schmidt & Zeff and Thomas D. Zeff for Defendant and Respondent.

OPINION

BROWN (G. A.), P. J.—In this personal injury action plaintiff, Gaylord Horney, appeals[1] from a summary judgment in favor of defendant Guy F. Atkinson Company (hereinafter Atkinson). The judgment is grounded upon the exclusive remedy immunity of an employer contained in Labor Code sections 3600 and 3601. Under the facts presented, the trial court held the "dual capacity" doctrine did not apply. The "dual capacity" doctrine permits an employee's personal injury action against an employer notwithstanding the existence of the employer-employee relationship.

Plaintiff was employed by a joint venture known as Melones Contractors, consisting of defendant Guy F. Atkinson Company and Gordon H. Ball, Inc. and the Arundel Corporation. The venture was the prime contractor for the construction of the New Melones Dam. Plaintiff was injured during the course of his employment while attempting to clear a jam-up in an onsite facility known as the rock plant, which sorted into various sizes the tons of rock excavated on the project.

In sum, the complaint alleged that defendant Atkinson defectively designed the plant without adequate instruction, warning devices and safeguards, and that Atkinson was engaged in the business of manufacturing, distributing and selling rock sorter plants and sold the subject sorter to Melones Contractors. Atkinson answered, alleging the action was barred by the provisions of the workers' compensation statutes. (Lab. Code, §§ 3600, 3601.)[2]

---

[1] Appellant's wife also joined in the complaint and sought damages for loss of consortium. She did not join in the appeal. For ease of reference appellant will be referred to in the masculine-singular since the wife's cause of action is derivative. (*Casaccia* v. *Green Valley Disposal Co.* (1976) 62 Cal.App.3d 610 [133 Cal.Rptr. 295].)

[2] "Liability for the compensation provided by this division, in lieu of any other liability whatsoever to any person . . . shall, without regard to negligence, exist against an employer for any injury sustained by his employees arising out of and in the course of the employment . . . ." (Lab. Code, § 3600.)

"Where the conditions of compensation exist, the right to recover such compensation . . . is . . . the exclusive remedy for injury or death of an employee against the employer . . . ." (Lab. Code, § 3601, subd. (a).)

In support of its motion for summary judgment, Atkinson filed the declaration of R. J. Dodson, vice president and manager of heavy construction of Atkinson, who was directly responsible for the construction work of Melones Contractors in building the dam and power plant. Attached to the declaration is a copy of the written joint venture agreement.

The declaration and agreement relate that Atkinson was the "sponsor" and managing partner for the project; that the project was very large and for that reason was undertaken by a joint venture. The employees of the project were paid on a joint venture payroll, and the joint venture maintained a separate bank account in which all project income was deposited and from which payments of all project expenses were withdrawn.

Any services performed by Atkinson with its personnel, including engineers' services in "design of construction equipment and facilities required for the construction work" were reimbursed to Atkinson at cost. One of the services performed by Atkinson as part of its obligation was to design a rock plant which, according to the declaration, was "designed particularly and uniquely for the types of rock found and used at the project site."

The declaration of Dodson states: "The particular rock plant in question where the plaintiff was allegedly injured was totally unlike any other rock plant previously designed and used by the GUY F. ATKINSON COMPANY. The rock plant in question was unique in the following respects:

"1. The rock plant had to be located on a haul road on the side of a steep hill, and it was designed specifically to accommodate that terrain;

"2. The rock plant had to be designed specifically to handle the sizes of rock obtained from sources designated by the Corps [of Engineers] and required by the contract for construction of this particular dam;

"3. The rock plant had to be large enough to accommodate the truck-hauling units used to transport rock to the plant;

"4. The end products (the specific sizes of rock as sorted) were different from any other project; and

"5. The plant had to meet a certain production capacity. Overall, the rock plant in question was the largest plant ever utilized by the GUY F. ATKINSON COMPANY."

The engineering department of Atkinson designed the plant[3] and supervised its assembly and installation.

---

[3]The engineering department does not furnish engineering services to the public generally but only for projects in which Atkinson is involved.

The actual work of assembling and installing the plant was done by employees of Melones Contractors.

The declaration states further: "Upon completion of the Melones Project the rock plant in question was disassembled, removed from the job site, and placed in storage. It is currently being sold on a part-by-part basis. As of this date the hopper and the grizzly tower have been sold to a concrete company located in the State of Washington. Most of the remaining component parts of the rock plant are still in storage and will be sold on a piecemeal basis much as the hopper and tower were sold. The rock plant is not being sold to the public in a total assembled manner or in a complete unit."

In opposition to the motion, the plaintiff filed the deposition of Frank A. Metzger, the manager of used equipment sales for Atkinson for 11 years. He was paid by Atkinson, but the time spent in disposing of equipment was reimbursed to Atkinson by the joint venture. In sum, his testimony related that he spent approximately 10 percent of his time selling used component parts of rock plants. He had sold such parts on five other dams after the projects were completed. The equipment was advertised and exposed to the market through various trade publications. After the plants were dismantled he would list and advertise the component parts for sale. He had never advertised or sold a complete plant. Some of the parts were on occasion kept for future use on other projects. The sale of common items such as conveyor belts and screens resulted in a 50 to 75 percent recovery of the cost, but beyond those items the diversification in types of plants and the degree of specialized design for particular jobs prevented the establishment of an average price upon sale.

When the equipment was sold the proceeds would go to Melones Contractors. Atkinson received no fee for selling the equipment. The cost of Metzger's services and the sale were reimbursed by Melones Contractors to Atkinson.

Also submitted was a list of 20 construction jobs dating back to 1955 for which materials plants or concrete plants had been constructed, and from which the component parts had been sold.

### DISCUSSION

An employee of a joint venture is an employee of each individual member of the joint venture. As such, a member of a joint venture is entitled to the protection of the exclusive remedy provisions of the Labor Code. (*Reed* v. *Industrial Acc. Com.* (1937) 10 Cal.2d 191, 193 [73 P.2d 1212, 114 A.L.R. 720]; *Sonberg* v. *Bergere* (1963) 220 Cal.App.2d 681, 682-683 [34 Cal.Rptr. 59].)

There are limitations to the doctrine. Thus, in *Dorado* v. *Knudsen Corp.* (1980) 103 Cal.App.3d 605 [163 Cal.Rptr. 477], a case upon which appellant relies, the complaint alleged Knudsen Corporation was engaged in the business of manufacturing, selling and distributing plastic crates for dairy products. The plaintiff, who was employed by Todds Food Company, was injured by an allegedly dangerous, defective and unsafe condition of the crates. He sued Knudsen Corporation for personal injuries. Knudsen Corporation, which also was a general partner in Todds Food Company, claimed immunity from suit by reason of the exclusive remedy provisions of the Labor Code. The appeal court held the action could be maintained.

The court held that Knudsen was engaged in the separate and independent business of manufacturing and selling plastic crates to the public and to Todds Food Company. That function was not part of its duties or responsibilities as general partner in Todds Food Company. Thus, Knudsen was operating in two separate and independent capacities—one as a manufacturer and seller of plastic crates and one as a processor and distributor of milk and other food products. As the *Dorado* court stated: "The documentary evidence filed by Knudsen in support of its motion clearly demonstrates that it occupies a dual capacity in respect to Todds Food Company . . . ." (*Id.*, at p. 611.) The court concluded that under these circumstances the "dual capacity" doctrine enunciated by this court in *Douglas* v. *E. & J. Gallo Winery* (1977) 69 Cal.App.3d 103 [137 Cal.Rptr. 797] applied.

Clearly, the *Dorado* case is distinguishable from the case at bench. The *Dorado* court accurately distinguished the cases of *Reed* v. *Industrial Acc. Com.*, *supra*, 10 Cal.2d 191, and *Sonberg* v. *Bergere*, *supra*, 220 Cal.App.2d 681, and others, stating "in those cases . . . it was clear that the injurious conduct of the partner or other actor occurred while such party 'was acting on behalf of the partnership.' (*Sonberg* v. *Bergere*, *supra*, 220 Cal.App.2d at p. 682.) These cases stand only for the proposition that a partnership is not an entity separate from its partners. They do not hold, or even suggest, that partners cannot be subjected to civil liability to employees of the partnership in respect of their activities while they are not acting on behalf of the partnership." (*Dorado* v. *Knudsen Corp.*, *supra*, 103 Cal.App.3d at pp. 613-614.)

In the instant case the declarations and agreement of joint venture establish, without conflict, that this case falls within the rules enunciated in *Reed* and *Sonberg*. In providing the engineering and other services and component parts for the design and construction of the rock plant, Atkinson was acting on behalf of the joint venture. These activities were part of the obligation of Atkinson as a sponsor and joint venturer under the partnership agreement. Atkinson was not acting in a capacity other than that of a joint venturer. It follows that Atkinson is entitled to the protection of Labor Code sections 3600 and 3601, subdivision (a).

There is yet another impediment to the application of the dual capacity doctrine. If the offending equipment was manufactured by Atkinson for use in its own business, the dual capacity doctrine would not apply. (*Shook* v. *Jacuzzi* (1976) 59 Cal.App.3d 978, 981 [129 Cal.Rptr. 496]; *Williams* v. *State Compensation Ins. Fund* (1975) 50 Cal.App.3d 116, 120 [123 Cal.Rptr. 812].) The dual capacity doctrine, if applicable, is an exception to this general rule, but the central requirement of the doctrine is that the defendant employer be engaged in the manufacture and sale of the allegedly defective product to the public.

In *Douglas* v. *E. & J. Gallo Winery, supra,* 69 Cal.App.3d 103, an employee of Gallo was injured when scaffolding fabricated by Gallo and used in connection with cleaning wine tanks collapsed. Because the case was before the court after a demurrer was sustained without leave to amend, the court assumed the allegation that Gallo was engaged in the manufacturing of scaffolding for sale to the general public was true.

■ The court quoted from 2A Larson, Law of Workmen's Compensation (1976) section 72.80, at page 14-112: "As stated by 2A Larson, Law of Workmen's Compensation (1976) section 72.80, at page 14-112: 'Under this doctrine, an employer normally shielded from tort liability by the exclusive remedy principle may become liable in tort to his own employee if he occupies, in addition to his capacity as employer, a second capacity that confers on him obligations independent of those imposed on him as employer.'" (*Douglas* v. *E. & J. Gallo Winery, supra,* 69 Cal.App.3d at pp. 107-108.)

The court held "that a plaintiff may state a cause of action (or causes of action) based on manufacturer's liability even though the defendant is also the plaintiff's employer and the alleged injuries take place in the course of employment, provided that the product involved is manufactured by the employer for sale *to the public* rather than being manufactured for the sole use of the employer." (*Id.,* at p. 107.)

In the course of its decision, the court elaborated: "We limit the holding of this case to a defendant who engages in manufacturing for sale to the general public. A single or occasional disconnected act does not constitute engaging in such manufacturing. The defendant who designs or manufactures a product for his own use and subsequently does sell an extra one of the products to his neighbor or to a similar business is not thereby subjected to manufacturers' liability when his own employee is injured in using the retained product. On the other hand, manufacturers' liability clearly arises where plaintiff employee is injured in using a product designed and manufactured by his employer *primarily* for sale to the general public and only incidentally used in the defendant's other activities. In between these extremes, the matter must be resolved on the facts of the particular case. The proper standard for determining whether a

defendant is engaged in manufacturing so as to make applicable the manufacturers' liability imposed hereunder is the exercise of judgment on a case by case basis to decide if the manufacturing by the particular defendant is such as to justify the conclusion that it is part and parcel of an activity which occupies the effort, attention and time of the defendant for the purpose of possible profit on a continuing basis." (*Id.*, at p. 113; italics added.) ▪▪ ▪▪▪ ▪ (See also *Bell* v. *Industrial Vangas, Inc.* (1981) 30 Cal.3d 268 [179 Cal.Rptr. 30, 637 P.2d 266]; *Bonus-Bilt, Inc.* v. *United Grocers, Ltd.* (1982) 136 Cal.App.3d 429, 434-440 [186 Cal.Rptr. 357].)[4]

▪▪ Clearly, Atkinson did not manufacture this or other rock plants for sale to the general public. That was not its primary business. Rock plants that had been fabricated, including this one, were each specially engineered, designed and fabricated to fit the needs of a particular construction project. The principal business of Atkinson was building dams and similar large construction projects. Its business was not that of constructing rock plants for sale to the public. If there had been no dam to construct there would have been no rock plant to build. The rock plant was built as an adjunct to the accomplishment of the main business of Atkinson and as a necessary incident to the construction of the Melones dam. Accordingly, it cannot be said that Atkinson was engaged in the business of designing and manufacturing rock plants for sale to the public.[5]

The fact that subsequent to the completion of the construction projects the rock plants, including the rock plant involved in this case, were dismantled, removed from the site, stored and sold on a part-by-part basis does not convert the business of Atkinson from that of constructing dams to that of manufacturing rock plants for sale to the public. It is to be noted that no rock plant had been advertised or sold as a unit. Manifestly, the sale of the used component parts of the rock plant was merely an incident to the accomplishment of the central and primary business of Atkinson.

Further, it is to be noted that the net proceeds of these sales were deposited to the account of the joint venture and not to the account of Atkinson. It appears

---

[4]Legislation effective January 1, 1983 (Stats. 1982, ch. 922, § 6, p. 3367), purporting to substantially abolish the dual capacity doctrine, is not retroactive. (See *Fosgate* v. *Gonzales* (1980) 107 Cal.App.3d 951, 959-961 [166 Cal.Rptr. 233].)

[5]Appellant has suggested that the court should have continued the hearing on the motion for summary judgment until after completion of the deposition of an accountant for Atkinson. Appellant suggests the deposition may have developed information that Atkinson sold the rock plant to the joint venture at a profit. Aside from the fact that appellant had sufficient time to complete the deposition before the summary judgment but did not do so, the contention is not only highly speculative but contrary to the express provisions of the joint venture agreement. Moreover, assuming Atkinson did make a profit on the transfer to the joint venture, that fact would not change the underlying nature of Atkinson's business of engaging in major construction projects to that of manufacturing rock plants for sale *to the public*.

that Atkinson was merely selling the used parts for the account of the joint venture which was the principal in the transaction.

On appeal from a summary judgment our review is limited to determining whether there is an issue of fact shown by documents before the trial court (Code Civ. Proc., § 437c; *Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785]), and to making an independent determination of the proper construction and effect of those documents as a matter of law. (*Larsen* v. *Johannes* (1970) 7 Cal.App.3d 491, 496 [86 Cal.Rptr. 744].)

Following the foregoing precepts, we are satisfied there is no triable issue of a material fact. Accordingly, the judgment is affirmed.

Franson, J., and Martin, J., concurred.