[No. B061175. Second Dist., Div. Five. Dec. 14, 1992.]

EMMET H. HOLMES, Plaintiff and Respondent, v.
MARJORIE ROTH, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rule 976(b) and 976.1, this opinion is certified for publication with the exception of part II of the Discussion.

---

COUNSEL

Gray, York, Duffy, Rattet & Mavridis and Jay S. McClaugherty for Defendant and Appellant.

Gayle & Neustadt, John R. Neustadt, Feinberg, Gottlieb & Grossman and Mark S. Gottlieb for Plaintiff and Respondent.

## OPINION

**BOREN, J.**—In this appeal, we conclude that the doorman at a condominium complex is the employee of the condominium homeowners association, but is not the employee of the individual homeowners merely by virtue of their membership in the homeowners' association. For this reason, we affirm the trial court's determination that the doorman's civil action against a negligent homeowner is not barred by the exclusive remedy provisions of the Workers' Compensation Act.

### FACTS

Appellant Marjorie Roth is a condominium owner in Los Angeles. Incident to her ownership, she is a member of the homeowners association (the association) which governs the complex in which her condominium is located. The association is a nonprofit corporation. As a member of the association, Roth pays a monthly assessment for the maintenance of the complex, as required by the association's declaration of covenants, conditions and restrictions. A portion of the assessment paid by Roth is applied to the casualty, liability and workers' compensation insurance which the association is required to carry.

Respondent Emmet H. Holmes is employed as a doorman at Roth's condominium complex. His salary is paid by the association, and he is supervised by the project manager. On November 14, 1988, Holmes attempted to rescue Roth when her vehicle began to roll backwards in front of the condominium complex. In the process, Holmes was injured.

Holmes filed a workers' compensation claim against the association with its insurance carrier, and received benefits from that policy. He also filed this lawsuit for personal injuries against Roth.

In March of 1991, Roth brought a motion for summary judgment, arguing that Holmes was her employee, that he was injured in the course and scope of his employment, and that workers' compensation was his exclusive remedy. This motion was apparently denied, though the order does not appear in the record.

On August 9, 1991, the parties stipulated to the entry of judgment against Roth. Roth retained the right to appeal the judgment, and agreed to pay

Holmes the sum of $100,000 in the event her appeal is unsuccessful. The trial court then entered judgment against Roth for $100,000, with the conditions stated in the stipulation. ■■■■■ Appeal was taken from the judgment that same day.[1]

DISCUSSION

I

■■■ Roth contends that she is Holmes's employer by virtue of her status as an association member whose dues support the association's workers' compensation insurance and Holmes's salary. In essence, she believes that she and the association are synonymous.

## A. Roth and the Association Are Separate Entities

In the case of *White v. Cox* (1971) 17 Cal.App.3d 824 [95 Cal.Rptr. 259, 45 A.L.R.3d 1161], it was argued by an unincorporated association of condominium owners that "each member is both principal and agent for every other member, and consequently the negligence of each member must be imputed to every other member." (*Id.* at p. 826.) The Court of Appeal rejected this argument, noting that "[s]ince 1962 the trend of case law has flowed toward full recognition of the unincorporated association as a separate legal entity. A member of an unincorporated association does not incur liability for acts of the association or acts of its members which he did not authorize or perform." (*Id.* at p. 827.)

The court in *White v. Cox* posed two questions: (1) does the condominium association possess a separate existence from its members? (2) do the members retain direct control over the operations of the association? (17 Cal.App.3d at p. 829.)

As to the first question, the court answered that a condominium association formed to handle the common affairs of the project must be considered a separate legal entity from its unit owners and association members. (17

---

[1] A consent or stipulated judgment is generally not appealable unless "consent was merely given to facilitate an appeal following adverse determination of a critical issue." (*Building Industry Assn. v. City of Camarillo* (1986) 41 Cal.3d 810, 817 [226 Cal.Rptr. 81, 718 P.2d 68]; *Connolly v. County of Orange* (1992) 1 Cal.4th 1105, 1111 [4 Cal.Rptr.2d 857, 824 P.2d 663].) Appellant is apparently willing to concede negligence; however, she contends that respondent may not maintain a tort action against her as a matter of law. The sole disputed issue in this case—workers' compensation coverage—was decided against appellant in the trial court. The parties' stipulated judgment allows the key legal issue to be heard in this court.

Cal.App.3d at pp. 829-830.) As to the second question, the court noted that each member often owns but a tiny fractional interest in the common areas of the condominium complex, and concluded that "in ordinary course a unit owner does not directly control the activities of the management body set up to handle the common affairs of the condominium project." (*Id.* at p. 830.)

The *White* case was cited with approval by the Supreme Court in *Frances T.* v. *Village Green Owners Assn.* (1986) 42 Cal.3d 490 [229 Cal.Rptr. 456, 723 P.2d 573, 59 A.L.R.4th 447]. That case concerned the liability of an incorporated condominium association. The court agreed with the White court's conclusion that a member of a condominium association has "no 'effective control over the operation of the common areas . . . for in fact he had no more control over operations than he would have had as a stock-holder in a corporation which owned and operated the project.' " (42 Cal.3d at p. 500.) The court observed that this conclusion had even more force in a case involving a nonprofit incorporated association, in which members are like shareholders in a business corporation. (*Id.*, fn. 7.)

The same analysis applies here. Although Roth pays into the common pool out of which Holmes's salary and the association's workers' compensation insurance premium is paid, this fact does not make her Holmes's employer. The incorporated nonprofit association to which Roth belongs possesses a separate legal existence from her own, and it alone controls Holmes' employment.

B. *An Employer Is One Who Exercises Control Over an Employee*

■ "The principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." (*Tieberg* v. *Unemployment Ins. App. Bd.* (1970) 2 Cal.3d 943, 946 [88 Cal.Rptr. 175, 471 P.2d 975].) In addition to the right to control an employee's performance, another important factor in determining an employment relationship is the right to discharge. (*S.G. Borello & Sons, Inc.* v. *Department of Industrial Relations* (1989) 48 Cal.3d 341, 350 [256 Cal.Rptr. 543, 769 P.2d 399].)

The importance of these factors is not diminished merely because the employing entity happens to be a membership organization. In *Claremont C. Club* v. *Industrial Acc. Com.* (1917) 174 Cal. 395 [163 P. 209], the employing entity was a country club which owned and maintained golf links for the use of its members. Control over the links was vested in committees selected from the club members. As a service to its members, the organization provided caddies. The caddies were hired and discharged by the greens

committee or a caddy-master, who also supervised the caddies. While actually caddying, a caddy's activities rested solely with the member using him, and the club had no means of knowing what unusual or dangerous duties a member might have the caddy perform. The caddies were either paid directly by the members using them, or indirectly through the caddy-master. (*Id.* at pp. 396-397.)

A caddy was injured while working for a member, and the question presented by the appeal was whether the injured caddy was an employee of the club for workers' compensation purposes, or if, while the caddy rendered services, the individual member became "his master." (174 Cal. at p. 397.) The Supreme Court rejected the concept that an employee who is employed and controlled by a membership organization becomes the employee of individual members merely by contributing to the convenience and pleasure of the members, regardless of whether the members paid the employee's compensation directly out of their pockets. The court wrote, "The employment and discharge of the caddy during all of the time when he is not actually in the service of a member is wholly under the control of the country club, and this is the determinative fact in the matter." (*Id.* at p. 398.)

 In this case, Roth presented no evidence that she exercised any control over Holmes's employment as a doorman. She did not hire him and is not entitled to fire him. She does not dictate his working hours or the manner in which he performs his duties. Her sole dominion over Holmes is exercised in the brief moments when he holds open a door for her and helps her carry her belongings, much like the golf caddy who assists the members of a golf club during the course of a game, for their convenience and pleasure. Under the circumstances, there is no triable issue of fact concerning Roth's ability to control or discharge Holmes: there is no evidence that she exercises the control of an employer over an employee.

## C. *The Authority Cited by Appellant Is Inapposite*

Roth relies upon *Cowell v. Industrial Acc. Com.* (1938) 11 Cal.2d 172 [78 P.2d 1016], for the proposition that the exclusive remedy provisions of the Workers' Compensation Act apply here, and that she is therefore immune from suit.

The *Cowell* case is distinguishable. First, it does not involve the specialized law pertaining to condominiums. The case also contains critical factual distinctions. The court found that a lime manufacturing corporation was operating a ranch, which was outside the scope of its lime business, "as an accommodation" to the ranch's actual owners, the Cowells. The Cowells,

who were undisclosed principals, wholly owned the ranch and took all the profits from it. There was a "direct connection" between the Cowells and the hiring of an employee who died as a result of injuries he sustained while working at the ranch. For this reason, the court found that the Cowells were the injured employee's employers for workers' compensation purposes. Significantly, the court observed that such a finding could not be sustained had the evidence "shown merely that [the Cowells] owned stock of the corporation which was operating the ranch, said ownership of stock and of property constituting [the Cowells'] sole connection with or relation to the injured laborer." (11 Cal.2d at p. 177.)

There is no evidence in the record in this case of a direct connection between Roth and the hiring of Holmes. His hiring is solely a management function of the association. Roth's ownership of a condominium—which gives her a 1/92 interest in the project—is her sole connection with Holmes. Thus, the *Cowell* case does not control here.

II*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Turner, P. J., and Jackson, J.,† concurred.

---

*See footnote, *ante*, page 931.

†Judge of the Municipal Court for the Antelope Judicial District sitting under assignment by the Chairperson of the Judicial Council.