Cheryl Marie MCLANDRICH, a minor, and Paul Michael McLandrich, a minor, by and through their guardian ad litem, Linda McLandrich, Plaintiffs,

v.

SOUTHERN CALIFORNIA EDISON COMPANY, San Diego Gas & Electric, Combustion Engineering, et al., Defendants.

Civil No. 95–0151–B (RBB).

United States District Court, S.D. California.

Feb. 16, 1996.

Kenneth Tune, Howarth & Smith, Los Angeles, CA, for plaintiff.

Ned Isokawa, Crosby, Heafey, Roach & May, Oakland, CA appeared on behalf of defendant San Diego Gas & Electric.

**ORDER GRANTING SDGE's MOTION FOR RECONSIDERATION, DENYING SDGE's MOTION FOR SUMMARY JUDGMENT AND GRANTING SUMMARY ADJUDICATION IN FAVOR OF PLAINTIFFS**

BREWSTER, District Judge.

## THE MOTIONS

On January 22, 1996, the above-captioned case came on regularly for hearing before the Honorable Rudi M. Brewster on the motion of defendant San Diego Gas & Electric [hereafter SDGE] for reconsideration of its previously filed motion for summary judgment and of this Court's *sua sponte* grant of summary adjudication in favor of plaintiffs that SDGE was not a joint employer of decedent for the purposes of worker's compensation exclusivity. On January 24, 1996, the Court held a supplemental hearing on SDGE's motion. At both hearings, Kenneth Tune, Esq., appeared on behalf of plaintiffs and Ned Isokawa, Esq., appeared on behalf of SDGE.

After due consideration of the moving and responding papers as well as all relevant evidence and the extensive oral presentations in both hearings, the Court hereby GRANTS SDGE's motion for reconsideration, and on reconsideration, AFFIRMS its prior rulings, DENYING SDGE's motion for summary judgment and GRANTING summary adjudication in favor of plaintiffs that SDGE was not a joint employer of plaintiffs' decedent.

## STATEMENT OF THE CASE

This is an action for wrongful death, arising out of Gregory McLandrich's alleged exposure to excessive radiation while working at the San Onofre Nuclear Generating Station [SONGS]. SONGS is co-owned by Southern California Edison [hereafter SCE], SDGE, the City of Riverside and the City of Anaheim. Decedent was, at all times material, an SCE employee stationed at SONGS. SCE exclusively operates, maintains and improves SONGS pursuant to a Joint Operating Agreement executed by all the co-owners. Plaintiffs Cheryl and Paul McLandrich, by and through their guardian ad litem, Linda McLandrich, are suing defendants SCE, SDGE, Combustion Engineering and the Institute for Nuclear Power Operations for the wrongful death of their father and husband, Gregory McLandrich.

By Order dated December 7, 1995, the Court granted summary judgment in favor of SCE, on the grounds that SCE was decedent's employer and that worker's compensation exclusivity, under California Labor Code

sections 3600(a) and 3602(a) barred plaintiffs' action against it.

Also by its December 7 Order, the Court denied a motion for summary judgment brought by SDGE. SDGE had asserted that it, along with SCE, was a "joint employer" and thus also entitled to worker's compensation exclusivity. The Court further *sua sponte* adjudicated that, as a matter of law, SDGE was *not* a joint employer in this case.

SDGE requested that the Court allow it to file a motion for reconsideration, with further briefing relative to the summary adjudication, asserting that it was unprepared for the possibility that this Court would *sua sponte* grant summary adjudication against it on the issue of joint employment. The Court granted SDGE's request for reconsideration and for further briefing.

In its motion for reconsideration, SDGE briefed additional legal arguments that it was, in fact, a joint employer. SDGE contends that the right to control a worker's employment is not the critical inquiry in assessing whether or not decedent may be considered to have been an employee of SDGE. SDGE concedes that all the co-owning parties delegated exclusive control over operations at SONGS to SCE, but asserts, *inter alia*, that this delegation created a principal-agent relationship between SDGE and SCE. According to SDGE, SCE acted on SDGE's behalf when SCE hired, supervised and otherwise controlled workers at SONGS, so that the acts of SCE as agent must be imputed to SDGE as principal. On this basis, SDGE concludes that it must be considered a joint employer together with SCE. Alternative theories of joint employment are also urged and will be analyzed here.

SDGE also raises for the first time an argument that, if it is not a joint employer, then the plaintiffs' action against it must nevertheless be dismissed under the rule announced by *Privette v. Superior Court*, 5 Cal.4th 689, 21 Cal.Rptr.2d 72, 854 P.2d 721 (1993). *Privette* held that the liability of a party under the "peculiar risk" doctrine does not extend to an employee of an independent contractor, where that party had hired the independent contractor to do inherently dangerous work, and the employee's injury arose out of that peculiar danger. *Id.* at 702, 21 Cal.Rptr.2d 72, 854 P.2d 721.

The Court hereby defers ruling on SDGE's *Privette*-based arguments until such time as SDGE brings them in the form of a properly noticed motion. The Court finds that it is inappropriate, on this motion for reconsideration, to "reconsider" a new legal theory and arguments which have not been previously briefed or considered. Accordingly, in this motion the Court will address only SDGE's arguments bearing on whether it qualifies as a "joint employer."

## JURISDICTION AND CHOICE OF LAW

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 under the Price–Anderson Amendments, 42 U.S.C. 2210(n)(2). The Court is guided by California state law as providing the substantive rules of decision to the extent that law is not inconsistent with the Price–Anderson Act. 42 U.S.C. 2014(hh) (in public liability actions, "the substantive rules for decision ... shall be derived from the law of the State in which the nuclear incident involved occurs, unless such law is inconsistent with the [Price–Anderson Act]"); *Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 256, 104 S.Ct. 615, 625, 78 L.Ed.2d 443 (1984) ("[i]n enacting and amending the Price–Anderson Act, Congress assumed that state-law remedies, in whatever form they might take, were available to those injured by nuclear incidents"); *Lujan v. Regents of Univ. of Cal.*, 69 F.3d 1511, 1518 (10th Cir.1995).

### The 1987 Operating Agreement

The facts relevant to the instant case are provided by the "Second Amended San Onofre Operating Agreement Among Southern California Edison Company San Diego Gas & Electric Company City of Anaheim and City of Riverside," dated February 1987 [hereafter Operating Agreement].

Under the Operating Agreement, SDGE is a co-owner of SONGS, owning 20% of Units 1, 2 and 3 at SONGS. SCE owns 80% of Unit 1 and 75.05% of Units 2 and 3. The Operating Agreement designates SCE as the "Operating Agent," and as such SCE is responsible for the performance of the opera-

tion and maintenance of, and the making of Capital Improvements for, SONGS. Operating Agreement, section 4.24, p. 8; *see also* section 5.1, p. 18. Sections 5.1 and 5.2 read:

Edison shall be the Operating Agent.

The Other Parties hereby appoint the Operating Agent as their agent, and the Operating Agent shall perform as their agent, as principal on its own behalf, the duties and responsibilities provided hereunder to be performed by it.

Section 7, p. 30 also pertains to this motion. Entitled "Operation and Maintenance," it reads:

The Operating Agent shall be responsible for providing all personnel required for the operation and maintenance of, and the making of Capital Improvements for, SONGS. If personnel other than the Operating Agent's employees and contractors are required for special work ... such personnel may be obtained from employees or contractors of the Other Parties to the extent that qualified personnel are available.... Employees or contractors of the Other Parties so assigned shall work under the direction and supervision of Operating Agent personnel in charge of such work. Section 7.1.

Also relevant are sections 13.1 and 13.2:

The Operating Agent shall provide the following insurance:

13.1.1 Comprehensive General Liability Insurance. Such insurance shall: ... (d) provide excess automobile liability insurance for the Operating Agent's vehicles and excess worker's compensation covering its employees at the San Onofre Nuclear Generating Station.

13.1.2 Worker's Compensation and Longshoremen's and Harbor Workers' Compensation Act coverage, where applicable, in accordance with statutory requirements, for the Operating Agent's employees who are regularly assigned to perform work at the [SONGS], or, in substitution, approved self-insurer programs.

13.2 San Diego [SDGE], Anaheim, and Riverside shall each maintain at their sole expense the following types of insurance for their activities at the [SONGS]:

13.2.1 Automobile Liability Insurance

13.2.2 Worker's Compensation Insurance with statutory limits in accordance with the laws of California, or, in substitution, a state-approved self-insurer program for their employees.

At section 25, "Relationship of Parties," the Operating Agreement reads:

The covenants, obligations, and liabilities of the Parties are intended to be several and not joint or collective, and nothing herein contained shall ever be construed to create an association, joint venture, trust or partnership, or to impose a trust or partnership covenant, obligation or liability on or with regard to any of the Parties. Each Party hereto shall be individually responsible for its own covenants, obligations, and liabilities as herein provided. No Party shall be under the control of, or shall be deemed to control, another Party. No Party shall have a right or power to bind another Party without its express written consent, except as expressly provided in the San Onofre Agreements.

## FACTUAL ANALYSIS

First, SDGE concedes that, under the Operating Agreement, it delegated exclusive control over SONGS operations to SCE. SDGE's concession is supported by section 4.24 of the Operating Agreement; furthermore, SDGE does not attempt to proffer any evidence tending to show that it had the right to exercise any employment control over the decedent whatsoever. Accordingly, this Court concludes that SDGE had no right to control the manner and means of decedent's work, and could not discharge decedent.[1]

Second, the Operating Agreement clearly distinguishes between SCE's employees and SDGE's employees. It explicitly disavows any agreement between the two to share employees, except in cases of "special work," wherein if SDGE employees did work, they would be under control of SCE. See Operat-

---

1. The Court notes further that the Operating Agreement does not provide that SDGE retained any residual or supervisory authority over SCE with respect to SONGS operations.

ing Agreement, section 7, *supra.* Moreover, the parties clearly contemplated the need to obtain separate worker's compensation insurance for their own employees. The Operating Agreement nowhere contains any provision for joint employment of any employees, whether SCE or SDGE, at SONGS.

Third, while the Operating Agreement provides that the parties will generally share all operating expenses in proportion to their ownership shares, and some of these expenses included decedent's salary and worker's compensation premiums, it is apparent from decedent's W–2 forms that he was paid by SCE. SDGE may have contributed indirectly to paying decedent's salary and premiums, but such indirect contribution arises not from an employment relationship but from the mere fact that SDGE agreed to pay its own share of all expenses with respect to the operations, maintenance, and capital improvements at SONGS.

Fourth, there is no doubt that SDGE benefitted from decedent's work. While the Operating Agreement indicates that one does not control the other and disclaims any creation of a joint venture or partnership relation with respect to the operation and maintenance of the plant, SONGS is obviously co-owned by four parties, one of whom is SDGE. No authority has been cited by SDGE, and the Court has found none, which would prohibit co-owners of a business property to agree between them that one co-owner would be given the exclusive power to operate and maintain the property for the benefit of all co-owners. That appears to be the situation here.

## LEGAL ISSUES IDENTIFIED

■ We start from the premise that only an employer who has entered into an employment relationship with its employee is entitled to the workers' compensation exclusivity rule. *See Arriaga v. County of Alameda,* 9 Cal.4th 1055, 1060, 40 Cal.Rptr.2d 116, 892 P.2d 150 (1995) ("An employer-employee

relationship must exist in order to bring the [Worker's Compensation] Act into effect" *quoting* Labor Code section 3600); *Gigax v. Ralston Purina Co.,* 136 Cal.App.3d 591, 598, 186 Cal.Rptr. 395 (1982) ("The workers' compensation laws were not designed to relieve one other than the employer from any liability imposed by statute or by common law."). Generally speaking, whether an employment relationship exists is a question of fact which becomes a question of law only when but one inference can reasonably be drawn from the facts. *Gigax,* at 599, 186 Cal.Rptr. 395, *see also Spradlin v. Cox,* 201 Cal.App.3d 799, 806, 247 Cal.Rptr. 347 (1988). The Court and counsel agree that the issue of employment relationship in this case presents a question of law because the pertinent facts are undisputed.

■ Whether an employee is simultaneously employed by two employers presents the special situation of "dual employment." A dual employment may fall in the category of either "joint" or "special" employment. A "joint employment" occurs when "two or more parties engage the services of an employee in an enterprise in which the employee is subject to the control of both parties." *In–Home Supportive Servs. v. Workers' Compensation Appeals Bd.,* 152 Cal.App.3d 720, 731, 199 Cal.Rptr. 697 (1984). A "special employment" occurs when "a general employer furnishes an employee to another person and during this engagement both employers have some right of control over the performance of the employee's services."

*Id.*[2]

This case presents the question of whether a joint employment exists under the circumstances presented here.

## SDGE CONTENTIONS OF LAW

■ SDGE argues that the right to control is not the key inquiry, and argues instead that in any principal-agent relationship the employees of the agent will always be

---

**2.** Larson's Workmen's Compensation Law (1995) concurs, defining "joint employment" as:

when a single employee, under contract with two employers, and under the simultaneous control of both, simultaneously performs services for both employers and when the service for each employer is the same as, or is closely related to, that for the other. § 48.40 at p. 8–553.

deemed to be employees of the principal for purposes of the worker's compensation laws.

SDGE argues that the *San Francisco–Oakland Terminal Rys. v. Industrial Accident Comm'n*, 180 Cal. 121, 179 P. 386 (1919), case did not center on the right to control and nevertheless an employment relationship was found. In *San Francisco*, the California Supreme Court affirmed a workers' compensation award against San Francisco–Oakland Terminal Railways. The Court held that the deceased in that case was an employee of both the petitioner and the Southern Pacific Company. The Court ruled that while the deceased was paid and supervised by Southern Pacific, petitioner was a joint employer in light of an agreement between the two companies under which Southern Pacific would hire watchmen at certain crossings and bill one-half of the wages to petitioner.

This case is distinguishable on at least two grounds. First, the case indicates that there was a joint employment agreement between the employers. 180 Cal. at 124, 179 P. 386. Second, although it seems that only Southern Pacific hired and supervised the watchmen, it was conceded that Southern Pacific would fire any watchman at the request of petitioner. *Id.* Thus, petitioner had the right to discharge the watchmen and could exercise a significant measure of control over the employees. As discussed above, these factors are missing in the instant case.

■ SDGE's contention that, as a matter of law, a principal is the employer of its agent's employees, is not persuasive. SDGE cites no case that stands for that broad a legal proposition. Even if that contention were a correct statement of California law, SDGE nowhere alleges, much less proves, that it as putative principal had any control in any respect over SCE, as putative agent, with respect to the operation and mainte-

nance of SONGS. It is well-established in California that an essential characteristic of an agency relationship is the principal's right to control the conduct of the agent with respect to matters entrusted to it. *Lewis v. Superior Court*, 30 Cal.App.4th 1850, 1868–69, 37 Cal.Rptr.2d 63 (1994), *citing Alvarez v. Felker Mfg.*, 230 Cal.App.2d 987, 999, 41 Cal.Rptr. 514 (1964) (relying on the Restatement (Second) of Agency); *see also Classen v. Weller*, 145 Cal.App.3d 27, 192 Cal.Rptr. 914 (1983). Without such control, there would be no agency relationship in this case, at least with respect to the operation of SONGS, and SDGE's argument fails.[3]

SDGE relies on *In–Home Supportive Servs. v. Workers' Compensation Appeals Bd.*, 152 Cal.App.3d 720, 731, 199 Cal.Rptr. 697 (1984), to bolster its agency-based imputation of an employment relationship. However, a careful reading of *In–Home* betrays SDGE. In *In–Home*, the court recognized that a principal has ultimate direction and control over that which has been delegated to its agent. 152 Cal.App.3d at 729, 199 Cal. Rptr. 697. In *In–Home*, the court ruled that the state was a dual employer with respect to an in-home services program it funded. The court found that the service recipient and the state were both employers for the purposes of the worker's compensation laws. The state apparently delegated authority to the county to supervise and administer this program, and the court found that the state and county were in an agency relationship. The state, by virtue of the fact that it had "ultimate direction and control" over the program, was deemed an employer. 152 Cal. App.3d at 729, 199 Cal.Rptr. 697.

As discussed above, there is no evidence to show that SDGE retained any authority vis-a-vis SCE or SONGS. In fact, the Operating Agreement specifically states that neither

---

**3.** The Court recognizes that, in the Operating Agreement, SCE was appointed "Operating Agent." However, the parties' use of the term "agent," without more, does not create an agency relationship. Moreover, the parties' use of the term "agent" conflicts with section 25 of the Operating Agreement, where the parties specifically state that:

[t]he covenants, obligations, and liabilities of the Parties are intended to be several and not

joint or collective.... Each Party hereto shall be individually responsible for its own covenants, obligations, and liabilities as herein provided. No Party shall be under the control of, or shall be deemed to control, another Party.

This provision of the Operating Agreement is plainly inconsistent with the creation of a common law agency relationship with respect to the operation of SONGS.

SCE or SDGE had any control over the other. This distinction is crucial: it underscores the facts that SDGE was not in a principal-agent relationship with SCE, at least with respect to employees at SONGS, and had no right of control over the decedent.

Counsel for SDGE relies heavily on the California Supreme Court case of *Cowell v. Industrial Accident Comm'n*, 11 Cal.2d 172, 78 P.2d 1016 (1938). In *Cowell*, a corporation operated a ranch as an accommodation for Mr. and Mrs. Cowell, owners of the ranch and principal shareholders of the corporation. A ranch employee was injured at the ranch, and the California Supreme Court held that both the corporation and the Cowells, as undisclosed principals to the corporation, were employers and hence liable for worker's compensation benefits.

The Court took pains to clarify that it was not deciding the case on "alter ego" principles. While the Court recognized that mere ownership of the corporation or of the ranch property would not confer employer status on the owners, standing alone, the Court found a "direct connection" between the owners and the hiring and supervision of the injured employee through the corporation. 11 Cal.2d at 177, 78 P.2d 1016.

However, the Court stressed that the "essential facts" in the case were that the corporation: (a) did not conduct the ranch business for the corporation's gain and did not share in ranch profits; (b) managed the ranch without compensation as an accommodation; and (c) paid all profits to the owners. *Id.*

*Cowell*, is distinguishable on several grounds. First, *Cowell* involved undisclosed principals, and there is no contention before the Court that SDGE occupies the position of an undisclosed principal. Second, *Cowell* rests on unique facts[4] which call into question its applicability to the instant case. Third, the *Cowell* Court necessarily found that the Cowells had the right to control their corporation, and through the

corporation had a right to control the ranch employees. By finding a principal-agent relationship between the Cowells and the corporation, the Court necessarily determined that the Cowells had a right to control the corporation, or else there could be no agency. In the instant case, as discussed above, SDGE has no right to control SCE and therefore did not create an agency relationship. Fourth, *Cowell* turned on a finding that there was a "direct connection" between the Cowells and the hiring of the injured employee. In the instant case, there is no showing that an analogous direct connection exits. *See Holmes v. Roth*, 11 Cal.App.4th 931, 14 Cal.Rptr.2d 315 (1992) (distinguishing *Cowell*). Finally, although *Cowell* recited that in fact Mrs. Cowell did not *exercise* any control over the ranch, it made no finding that Mrs. Cowell did not have the *right* to control the work there had she chosen to exercise it. The opposite inference is suggested by the Court's recognition of Mrs. Cowell's "direct connection" with the ranch, the corporation acting as an "accommodation" for the Cowells, and the conspicuous absence of a finding of *no* right to control. *Cowell*, 11 Cal.2d at 176–77, 78 P.2d 1016.

SDGE also cites to several "joint venture" cases which hold, generally, that where a joint venture exists, each of the parties is an agent and principal of the other such that each would be an employer and would be entitled to workers' compensation exclusivity. *See Horney v. Guy F. Atkinson Co.*, 140 Cal.App.3d 923, 190 Cal.Rptr. 18 (1983); *Conner v. El Paso Natural Gas Co.*, 123 Ariz. 291, 599 P.2d 247 (App.1979); *Trickey v. Amerada Hess Corp.*, 878 F.2d 231 (8th Cir.1989). These cases do not support SDGE's argument because SDGE expressly disavows the status of a joint venturer, with respect to the operation of SONGS, both in its argument and in the Operating Agreement.

The joint venture cases are important because a close reading shows they are based

---

4. The corporation was engaged in mining in another county and had no corporate relationship to the ranch; it was owned principally by the owners of the ranch, Mr. and Mrs. Cowell; Mr.

Cowell was president of the corporation and was obviously using it as the shell through which to run the papers.

on partnership principles of control over the partnership entity; in other words, in a joint venture each partner is presumed to have control with respect to the venture, and, hence, control with respect to the venture's employees. However, as specified in the Operating Agreement, SCE and SDGE each maintain their own employees and SDGE has no employment control over either SONGS, SCE, or SCE's employees.

SDGE invites the Court's attention to *Horney v. Guy F. Atkinson Co.*, 140 Cal.App.3d 923, 190 Cal.Rptr. 18 (1983). In *Horney,* the court held that an employee of a joint venture is an employee of each individual member of the joint venture, so that each joint venturer is entitled to the benefits of the worker's compensation exclusivity provisions.

*Horney* is distinguishable on several grounds. In *Horney*, it was proven that the employee in fact was employed by the joint venture, which maintained a separate bank account for joint venture income and expenses, and the joint venture employees were paid from a joint venture payroll. These facts do not exist in the instant case. First, SDGE does not even attempt to argue that SONGS was being operated as a joint venture. Second, there is no contention that there was a separate SONGS bank account or that the decedent's pay came from a SONGS payroll; in fact, plaintiffs have submitted W–2 forms which list SCE as the employer—the decedent was paid from SCE's payroll. Last, the effect of *Horney* is diluted by *Rogness v. English Moss Joint Venturers*, 194 Cal.App.3d 190, 239 Cal.Rptr. 387 (1987), which held that an employee working for one member of a joint venture was not a joint employee of the other joint venture members. *Rogness* found important the facts that: (a) the plaintiffs were employees of the hiring member and not the joint venture; (b) the hiring member could dis-

charge and control the work of the employee; (c) the employee was paid from the member's bank account and not that of the joint venture; and (d) the hiring member carried the worker's compensation insurance.[5] Factually, *Rogness* is more applicable to the instant case, especially where the evidence from the Operating Agreement makes it clear that the decedent in this case was SCE's employee and not an employee of SONGS.

All of SDGE's contentions and cases cited in support of them have been carefully analyzed. The Court finds no merit in SDGE's position as set forth in the paragraphs above.

■■ The right to control, although not the only relevant element, is the most important element in determining a joint employment relationship. See *In re Ankeny*, 184 B.R. 64 (Bankr. 9th Cir.1995) (joint employer relationship found where both employers controlled the employee). Indeed, "the principal test of an employment relationship is whether the person to whom service is rendered has the right to control the manner and means of accomplishing the result desired." *Tieberg v. Unemployment Ins. Appeals Bd.*, 2 Cal.3d 943, 946, 88 Cal.Rptr. 175, 471 P.2d 975 (1970); *S.G. Borello & Sons, Inc. v. Dep't of Indus. Relations*, 48 Cal.3d 341, 350–51, 256 Cal.Rptr. 543, 769 P.2d 399 (1989) (*quoting Tieberg* ).[6] This test of control has figured prominently in a wide number of cases, see *Kowalski v. Shell Oil Co.*, 23 Cal.3d 168, 176–78, 151 Cal.Rptr. 671, 588 P.2d 811 (1979) (special employment case); *Arriaga*, 9 Cal.4th at 1062–63, 40 Cal.Rptr.2d 116, 892 P.2d 150 (worker held to be employee of both County and State where both benefitted from the work and both had control over employee); see also *Holmes v. Roth*, 11 Cal.App.4th 931, 14 Cal.Rptr.2d 315 (1992); *Santa Cruz Poultry, Inc. v. Superior*

---

**5.** The *Rogness* court also noted that the employee's work also involved work elsewhere at another location, but it is unclear how important this factor was to the court.

**6.** Larsen's Workmen's Compensation Law, § 43.40 (1995) states:

> On only one point as to the relative weight of the various tests is there an accepted rule of law: It is constantly said that the right to

control the details of the work is the primary test.

Witkin is in accord:

> The most significant factor tending to show employment is the right of the employer to control the details of the work; whether exercised or not. Witkin, *Summary of California Law*, Agency and Employment, § 15, citing the Restatement (Second) of Agency § 220(2)(a).

 

*Court,* 194 Cal.App.3d 575, 239 Cal.Rptr. 578 (1987).

Courts have weighed other factors in addition to the right to control in assessing an employment relationship. The right to discharge the worker, another indication of control, is another strong indicator of employment status. *S.G. Borello,* 48 Cal.3d at 350, 256 Cal.Rptr. 543, 769 P.2d 399 (1989); *Holmes,* 11 Cal.App.4th 931, 14 Cal.Rptr.2d 315; *In–Home Supportive Servs. v. Workers' Compensation Appeal Bds,* 152 Cal.App.3d 720, 731, 199 Cal.Rptr. 697 (1984).

Other factors include:

(a) whether a putative employer benefitted from the employee's work, *see Arriaga,* 9 Cal.4th at 1062 [40 Cal.Rptr.2d 116, 892 P.2d 150];

(b) whether a putative employer paid the employee's salary and relevant workers' compensation insurance premiums, *National Auto Casualty Ins. v. Industrial Accident Comm'n,* 80 Cal.App.2d 769, 773 [182 P.2d 634] (1947);

(c) whether or not there was a "joint enterprise," *id.;*

(d) whether or not two employers had an agreement to share the employee's services or wages, *San Francisco–Oakland Terminal Rys. v. Industrial Accident Comm'n, supra,* 180 Cal. 121 [179 P. 386] (1919).

## CONCLUSION

After consideration of all of the facts presented, the arguments and cases marshalled by all parties, and the oral presentations made at three hearings on this issue, the Court concludes that there are no factual disputes, and as a matter of law, the facts of this case do not justify a finding by this Court that SDGE is a joint employer. Furthermore, for the same reasons and based upon the same analysis of the same undisputed facts, the Court finds that as a matter of law SDGE is not a joint employer of plaintiffs' decedent.

THEREFORE, the Court, on reconsideration of SDGE's motion for summary judgment, DENIES SDGE's summary judgment and GRANTS summary adjudication in favor of plaintiffs that SDGE did not occupy the status of decedent's employer for the purposes of worker's compensation exclusivity. Having deferred consideration of SDGE's *Privette* theory of non-liability, the Court at the request of SDGE previously calendared a new motion for summary judgment by SDGE for March 18, 1996, at 10:30 a.m. Briefing shall follow the Local Rules.

IT IS SO ORDERED.