[Civ. No. 6469. Fifth Dist. Dec. 8, 1981.]

ROBERT PARSONS, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
County of Tulare, Respondents.

COUNSEL

Robert Stevenson for Petitioner.

Hanna, Brophy, MacLean, McAleer & Jensen and Joseph A. Iago for Respondents.

## OPINION

**FRANSON, Acting P. J.**—We review an order of respondent Workers' Compensation Appeals Board denying compensation to petitioner, a county prisoner, who was injured while working as a kitchen helper at the Tulare County correctional road camp. Petitioner seeks to overturn the board's finding that he was not an employee of the county within the meaning of the workers' compensation law.

The facts are not in dispute. Petitioner was convicted of a misdemeanor in the Municipal Court of Tulare County. He was granted two years' probation upon the condition that he serve forty-five days, minus a one-day credit, on twenty-two consecutive weekends at the county road camp. Shortly after confinement his commitment was amended to be served on Tuesday through Thursday.

On his first day of confinement, petitioner was told to work in the kitchen. His duties included washing, sweeping, mopping floors and helping serve the prisoners. At no time was he hired or contracted with to do this work. Petitioner was not paid for his services nor was he loaned out to any other entity or agency. Because petitioner was not serving a "straight sentence," he could not receive work-time credits; hence, his work could not affect the length of his sentence.[1] Petitioner believed he was required to work, but if he refused to work he would have to serve his time in the main jail.

Petitioner injured his back lifting a heavy garbage can while working in the kitchen. Petitioner received medical care at the Kern County

---

[1] The statement petitioner could not receive work-time credits is based on the testimony of Lieutenant Peabody, the officer in charge of the camp where petitioner was detained. Petitioner does not argue to the contrary.

It appears to be a common judicial and administrative practice to exclude county inmates or prisoners from eligibility for work-time credits when they are confined on weekends as a condition of probation, as opposed to confinement pursuant to regular sentencing. This practice, however, appears to be contrary to Penal Code section 4019 which provides in pertinent part: "(2) When a prisoner is confined in or committed to the county jail, industrial farm, or road camp or any city jail, industrial farm, or road camp *as a condition of probation* after suspension of imposition of a sentence or suspension of execution of sentence, in a criminal action or proceeding.

"...

"(b) ... for each six-day period in which a prisoner is committed to a facility as specified in this section, one day shall be deducted from his period of confinement unless it appears by the record that the prisoner has refused to satisfactorily perform labor as assigned ...." (Italics added.)

Medical Center and Medi-Cal paid most of his bills; however, he still has outstanding medical bills from his injury.

There are appropriate ordinances and resolutions of the Board of Supervisors of Tulare County authorizing prisoners to be used for various work purposes, i.e., fighting fires and performing labor on the public roads and ways of the county.

## DISCUSSION

■ We first dispose of petitioner's argument that he was an employee of the County of Tulare at the time of his injury for purposes of workers' compensation as provided in Penal Code section 4017. This statute provides:

"All persons confined in the county jail, industrial farm, road camp, or city jail under a final judgment of imprisonment rendered in a criminal action or proceeding and all persons confined in the county jail, industrial farm, road camp, or city jail as a condition of probation after suspension of imposition of a sentence or suspension of execution of sentence *may be required* by an order of the board of supervisors or city council to perform labor on the public works or ways in the county or city, respectively, and to engage in the prevention and suppression of forest, brush and grass fires upon lands within the county or city, respectively, or upon lands in adjacent counties where the suppression of fires would afford fire protection to lands within the county.

"*Whenever any such person so in custody shall suffer injuries or death while working in the prevention or suppression of forest, brush or grass fires he shall be considered to be an employee of the county or city, respectively, for the purposes of compensation under the provisions of the Labor Code regarding workmen's compensation* and such work shall be performed under the direct supervision of a local, state or federal employee whose duties include fire prevention and suppression work. A regularly employed member of an organized fire department shall not be required to directly supervise more than 20 such persons so in custody.

"As used in this section, '*labor on the public works*' *includes clerical and menial labor* in the county jail, industrial farm, camps maintained for the labor of such persons upon the ways in the county, or city jail." (Italics added.)

Since petitioner was not engaged in the suppression of forest, brush or grass fires at the time of his injury, Penal Code section 4017 does not afford him workers' compensation coverage. Petitioner misinterprets the statute when he argues that because the Legislature provided that "labor on the public works" includes clerical and menial labor in the jail, farm or camps, petitioner's work as a kitchen helper made him an employee of the county for purposes of workers' compensation. The phrase "labor on the public works" refers only to the type of labor which may be required of prisoners by the board of supervisors or city council; it does not mean such labor is covered by workers' compensation. Only firefighters or persons actively engaged in the prevention of fires shall be deemed employees for this purpose.

The legislative history of Penal Code section 4017 also supports this interpretation. When this section was enacted in 1941, it provided, just as it does today, that county prisoners can be compelled to work by order of the board of supervisors, but there was no mention of firefighting or workers' compensation (Stats. 1941, ch. 106, § 15, p. 1122). When the section was amended in 1962, it provided for the first time that county prisoners could be required to fight and prevent forest fires and concurrently provided that such prisoners were eligible for workers' compensation (Stats. 1963, First Ex. Sess. 1962, ch. 43, § 1, p. 332). In light of this legislative action, it is manifest that the intent of the Legislature was to add prevention and suppression of fires as one duty which could be required of county prisoners and at the same time place prisoners engaged in such hazardous activities under the protection of workers' compensation.

Nor can we accept petitioner's equal protection argument that no rational basis exists for distinguishing between county prisoners performing labor on the public works or ways and prisoners engaging in the prevention and suppression of fires upon county lands. There generally is a greater risk of injury or death in fighting or preventing fires than in working on the public ways or providing clerical or menial labor in the jail, industrial farms or camps. Therefore, a rational basis exists for the Legislature to provide worker's compensation coverage only for those county prisoners engaged in prevention and suppression of fires. (See 61 Ops.Cal.Atty.Gen. 186, 190 (1978).)

 We turn now to the dispositive issue: whether petitioner was an employee of the county under the Labor Code provisions governing workers' compensation? We approach this question with certain princi-

ples in mind. ■ First, the Workers' Compensation Act shall be liberally construed in favor of the employee (Lab. Code, § 3202). "If a provision [in the Workers' Compensation Act] may be reasonably construed to provide coverage or payments, that construction should usually be adopted even if another reasonable interpretation is possible." (*Department of Corrections v. Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 197, 206 [152 Cal.Rptr. 345, 589 P.2d 853].) ■ Second, we are not bound by common law conceptions of employment contracts; thus, workers' compensation law does not require an applicant receive monetary compensation for his services. (See *Laeng v. Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 771, 777, fn. 5 [100 Cal.Rptr. 377, 494 P.2d 1].) ■ Third, county prisoners and jail inmates are not deprived of their civil rights as are *state* prisoners. Therefore, we may not draw any negative inferences from the fact that petitioner was in custody since he retained all of his civil rights. Petitioner must be judged like any other citizen in deciding whether he comes within the workers' compensation laws. (See 61 Ops.Cal.Atty. Gen. 186, 188-189 (1978); 15 Ops.Cal.Atty.Gen. 38-39 (1950); 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d ed. 1981) § 7.04[1][b].) ■ Finally, persons rendering services for another other than as an independent contractor or unless expressly excluded from coverage are presumed to be employees. (Lab. Code, § 3357.)

Labor Code section 3351 provides in relevant part: "'Employee' means every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed, ..." Labor Code section 3351 goes on to include aliens, minors, paid public officials, persons incarcerated in state penal or correctional institutions, etc. within the definition of employee.[2] ■ Petitioner is clearly not within the

---

[2]Labor Code section 3351, in full, reads: "'Employee' means every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written, whether lawfully or unlawfully employed, and includes:

"(a) Aliens and minors.

"(b) All elected and appointed paid public officers.

"(c) All officers and members of boards of directors of quasi-public or private corporations while rendering actual service for such corporations for pay; provided that, where the officers and directors of any such private corporation are the sole shareholders thereof, the corporation and such officers and directors shall come under the compensation provisions of this division only by election as provided in subdivision (a) of Section 4151.

"(d) Except as provided in subdivision (h) of Section 3352, any person employed by

provision of subdivision (e) of Labor Code section 3351 since he was not incarcerated in a state penal or correctional institution.[3]

Two Court of Appeal decisions have addressed the issue of whether county jail inmates are employees under Labor Code section 3351. In *Pruitt* v. *Workmen's Comp. App. Bd.* (1968) 261 Cal.App.2d 546 [68 Cal.Rptr. 12] the petitioner was a jail inmate of the County of Nevada and he was "loaned out" to Nevada City to work on its sewage treatment plant. (*Id.*, at p. 547-548.) In Nevada County prisoners could volunteer for work, but did not have to do so. Those who volunteered were eligible to have five days deducted off their sentence for every thirty days work. Inmates received no compensation other than the reduction in their sentence and a carton of cigarettes once a week. (*Id.*, at p. 548.)

The *Pruitt* court initially reviewed a number of cases, including an early Supreme Court decision, *California Highway Com.* v. *Indus. Acc. Com.* (1926) 200 Cal. 44 [251 P. 808, 49 A.L.R. 1377], which distinguished between voluntary and compulsory work performed as an incident to penal servitude (261 Cal.App.2d at pp. 549-551). The court then examined Penal Code section 4017 and Government Code section 25359, which provide that county prisoners may be required to work, and concluded that compulsory work as an incident of incarceration was the backbone of those laws. (*Id.*, at p. 551.)

---

the owner or occupant of a residential dwelling whose duties are incidental to the ownership, maintenance, or use of the dwelling, including the care and supervision of children, or whose duties are personal and not in the course of the trade, business, profession, or occupation of such owner or occupant.

"(e) All persons incarcerated in a state penal or correctional institution while engaged in assigned work.

"(f) All working members of a partnership receiving wages irrespective of profits from such partnership; provided that where the working members of the partnership are general partners, the partnership and such partners shall come under the compensation provisions of this division only by election as provided in subdivision (a) of Section 4151."

[3]Respondent county argues Labor Code section 3351, subdivision (e) giving employee status for workers' compensation purposes to a state prisoner doing assigned work evidences a clear legislative intent to exclude county prisoners from compensation coverage. Any such implication, however, would be offset by the provisions of Labor Code section 3352 which *exclude* certain categories of persons from employee status for purposes of workers' compensation coverage. County prisoners such as petitioner are not mentioned in section 3352. Thus, we perceive no legislative intent either to include or exclude county prisoners from the benefits of the workers' compensation laws. We must determine whether petitioner qualifies as an employee solely under the general employee definition of Labor Code section 3351.

The court ruled that the petitioner was a volunteer[4] notwithstanding that the monetary consideration passing to the petitioner was nil and the consideration in the form of a carton of cigarettes was of mere nominal value. (*Id.*, at pp. 552-553.) It was noted the payment of wages was not a *sine qua non* of employment under workmen's compensation law. (*Id.*, at p. 553, citing *Union Lumber Co.* v. *Indus. Acc. Com.* (1936) 12 Cal.App.2d 588, 596 [55 P.2d 911].) The court concluded the principal consideration passing to the petitioner was his credit on sentence time plus the release from jail confinement while he was working. (*Pruitt* v. *Workmen's Comp. App. Bd., supra*, at p. 553.) Finally, the court cited the mandate of liberal interpretation in favor of the workman to be given workmen's compensation provisions as a material factor in their decision. (*Ibid.*)

In *State Compensation Ins. Fund* v. *Workmen's Comp. App. Bd.* (*Childs*) (1970) 8 Cal.App.3d 978 [87 Cal.Rptr. 770] the petitioner was injured while working as a member of a road gang while an inmate of the Los Angeles County jail. (*Id.*, at p. 979.) Petitioner had worked daily on various projects and was paid approximately 50¢ per day for his labor. There was no indication that his sentence was reduced because of his work. He testified he had volunteered to work on the highway job, and he was not required to do so. (*Ibid.*)

The Court of Appeal considered the *Pruitt* case and found it to be applicable. (*Id.*, at pp. 980-982.) The only evidence showing the petitioner was a volunteer was his own testimony he had volunteered for the job. The court noted, however, that under Penal Code section 4017 the county board of supervisors could have adopted an ordinance requiring prisoners to perform labor, but such an ordinance had never been enacted in Los Angeles County. (*Id.*, at pp. 981-982.)

The *Childs* court held petitioner's work was voluntary; he performed a service in return for the gratuity of 50¢ a day. Therefore, he was an employee eligible for workers' compensation. (*Id.*, at p. 983.) The court cited the policy of liberal construction of California's workers' compen-

---

[4]The use of the word "volunteer" in *Pruitt* and the case that followed it, *Childs*, is somewhat of a misnomer. A true "volunteer" is excluded from workers' compensation because there is no employment relationship. (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation, *supra*, § 4.04[2]; cf. Lab. Code, §§ 3352, 3361.5, 3363.5, 3363.6.) We interpret the discussion of whether a prisoner was a "volunteer" in *Pruitt* and *Childs* as basically addressing the issue of whether there was a consensual relationship.

sation laws and further noted the policy of stressing rehabilitation of those convicted of crimes. The court declared that precluding coverage under workers' compensation for voluntary labor performed by prisoners would be a disincentive for them to participate in such activity. (*Ibid.*)

Petitioner contends *Pruitt* and *Childs* govern in the instant case. Petitioner argues he was a volunteer in performing his services as a kitchen helper because he was free to refuse to work thereby requiring his placement in the main jail. Petitioner further argues he was compensated for his services because of the benefit he received in serving his time outside of the jail. Petitioner's arguments are unpersuasive.

■ The law clearly provides that the Labor Code section 3357's presumption of employee status is overcome if the essential contract of hire, express or implied, is not present under Labor Code section 3351. (*Jones* v. *Workmen's Comp. Appeals Bd.* (1971) 20 Cal.App.3d 124, 128 [97 Cal.Rptr. 554]; 2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation, *supra*, § 7.02[1][a].) The traditional features of an employment contract are (1) consent of the parties, (2) consideration for the services rendered, and (3) control by the employer over the employee. (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation, *supra*, at § 3.02.) Although these common law contract requirements are not to be rigidly applied, a consensual relationship between the worker and his alleged employer nevertheless is an indispensable prerequisite to the existence of an employment contract under Labor Code section 3351. (*Ibid.*)

■ In the present case, there was no consensual relationship between petitioner and the county insofar as his labor at the road camp; rather, petitioner's work was incidental to his incarceration and was not the result of any implied bargain or negotiation between petitioner and the county. Petitioner was expected to work at the road camp as a condition of his probation. He understood this when he accepted the privilege of probation. Indeed, petitioner testified he believed he was required to work.[5] It was the correctional officer who stated that if a prisoner refused to work he would be returned to the jail.

---

[5]Petitioner's exact testimony is as follows:

"Q. Was this work that was required of you upon reporting at the correctional center or was this work that you volunteered for?

"A. No. It's required of you. *In order to go out there, you are required to work.*" (Italics added.)

Petitioner had a choice between being routinely sentenced to jail or being placed on probation with the condition he serve 45 days at the industrial road camp. It cannot be said that petitioner "bargained" for or "consented" to work 45 days, i.e., not by any stretch of imagination did petitioner argue at the sentencing hearing that he would work 45 days if given probation. His choice was between regular sentencing or probation with the included condition that he serve 45 days at the road camp. In short, petitioner accepted an act of judicial leniency.

Petitioner challenges reality by arguing that his work became consensual in nature once he arrived at the camp because he could have refused to work and be placed in jail. Absent exceptional circumstances such as ill health, no rational probationary prisoner sent to the road camp would jeopardize his probation by refusing to work.

Tulare County ordinances and resolutions enacted pursuant to Penal Code section 4017 require county jail and correctional road camp inmates to work. This statutory compulsion to work further negates any consensual employment relationship under the facts of this case. The question of whether there was a "voluntary" consensual relationship turned in *Childs* on the fact Los Angeles County inmates were not required to work by ordinance (8 Cal.App.3d at p. 983).

Finally, petitioner received no consideration or legally cognizable benefit from his labor other than what he would have received had he served his time in jail, i.e., food and clothing. In our view, the privilege of working at the camp rather than being confined in the jail does not qualify as sufficient consideration to support an employment relationship. (Cf. *Pruitt* v. *Workmen's Comp. App. Bd., supra*, 261 Cal.App.2d at p. 553.) Petitioner received no work-time credit on his sentence as did the prisoner in *Pruitt*.[6] He received no monetary compensation for his services, however minimal, as in *Childs*.

We close by observing that petitioner's rather persuasive argument that county prisoners are entitled to workers' compensation when they perform essential work for the county (other than routine housekeeping duties in the jail or camps), which otherwise would be performed by hired personnel from the outside, is one properly made to the Legisla-

---

[6]Even though petitioner legally may have been entitled to a work credit on his sentence (see fn. 1, *ante*), he was not aware of this right and it was not given to him by the court or camp officials. The record indicates petitioner's time in custody was shortened only because of his injury.

ture. It may well be that an enlightened public policy grounded on prisoner rehabilitation calls for workers' compensation coverage for all county prisoners who are required to work outside their cells during their incarceration. (Cf. *State Compensation Ins. Fund* v. *Workmen's Comp. App. Bd.* (*Childs*), *supra*, 8 Cal.App.3d at p. 983.) We express no opinion on this question. We hold only that under the particular facts of this case viewed in the light of the principles expressed in *Pruitt, supra*, 261 Cal.App.2d 546 and *Childs, supra*, 8 Cal.App.3d 978, there was no employment relationship between petitioner and Tulare County at the time of his injury as contemplated by Labor Code section 3351.

The order is affirmed.

Andreen, J., and Stone (C. V.), J.,* concurred.

*Assigned by the Chairperson of the Judicial Council.