[No. G013852. Fourth Dist., Div. Three. July 8, 1993.]

CALIFORNIA STATE UNIVERSTIY, FULLERTON, Petitioner, v. WORKERS' COMPENSATION APPEALS BOARD and LARRY E. REMBOLD, JR., Respondents.

## COUNSEL

Krimen, Klein, Da Silva, Daneri & Bloom and Robert A. La Porta for Petitioner.

Lawrence D. Rohlfing and Marc V. Kalagian for Respondent.

## OPINION

**CROSBY, J.**—Larry E. Rembold, Jr., was convicted of a criminal offense and given the opportunity to complete 78 hours of community service in lieu of paying a fine.[1] He was fulfilling the community service option as a groundskeeper on the campus of California State University, Fullerton, when he was injured in a fall. He filed a claim for workers' compensation benefits against the university, contending his injuries occurred in the course and scope of his employment. The workers' compensation judge agreed and awarded benefits.

The university petitioned for reconsideration, arguing two theories. The success of the first depended on a finding that Rembold's community service was not a voluntary act, but was performed under the compulsion of Penal Code section 4017 and Orange County's concomitant Resolution

---

[1] The parties agreed at oral argument that a copy of the probation order could be lodged with this court. It reflects the assessment of a $75 fine. Payment was stayed for four months. If defendant returned to court with proof that he completed 78 hours of community service, the fine would be forgiven.

No. 73-170.[2] ▮▮▮ ▪▪ The alternative theory hinged on the opposite notion, i.e., that Rembold was a volunteer per Labor Code section 3352, subdivision (i) and therefore not an employee entitled to workers' compensation benefits. The Workers' Compensation Appeals Board (WCAB) found no merit in either and denied the petition. We agree with the second theory, however.

▮ The WCAB's finding on the employee status of an injured worker, if based on substantial evidence, must be upheld by a reviewing court. (*S. G. Borello & Sons, Inc.* v. *Department of Industrial Relations* (1989) 48 Cal.3d 341, 349.) Nevertheless, if the evidence is not in dispute, the employment question becomes one of law and "the Court of Appeal may independently review [the] facts to determine the correct answer." (*Barragan* v. *Workers' Comp. Appeals Bd.* (1987) 195 Cal.App.3d 637, 642 [240 Cal.Rptr. 811].) ▮ As there was no dispute concerning the circumstances of Rembold's community service obligation, his employee status presents a question of law for us to resolve.

In this regard, the briefs have proved of little benefit. The arguments are premised on the notion that Rembold was a county jail inmate. Although he indisputably was not, the parties rehash the relative merits of Penal Code section 4017 and Orange County's resolution mandating public works labor for incarcerated defendants.

---

[2]Penal Code section 4017 authorizes counties and cities to enact ordinances that require "persons confined in the county jail, industrial farm, road camp, or city jail under a final judgment of imprisonment rendered in a criminal action or proceeding and all persons confined in the county jail, industrial farm, road camp, or city jail as a condition of probation after suspension of imposition of a sentence or suspension of execution of sentence . . . to perform labor on the public works or ways in the county or city, respectively, and to engage in the prevention and suppression of forest, brush and grass fires . . . ." The statute adds that those individuals required by ordinance to participate in fire prevention and suppression activities are considered employees of the incarcerating entity and entitled to workers' compensation benefits.

Section 4017's failure to similarly accord employee status to convicted defendants who "perform [other] labor on the public works or ways in the county or city" means those individuals are not entitled to the protection of the Labor Code as employees of the county or city that has compelled their labor. As Hanna explains, "If a county jail inmate's participation in a work-release program is not voluntary, but is required by a county ordinance or resolution adopted pursuant to [Penal Code section 4017], then the inmate will not be considered to be a *county* employee. In such a case, the inmate's work is considered compulsory, as incidental to his or her incarceration, and not under a contract of hire. As a result, the inmate will not be entitled to workers' compensation benefits for injuries sustained in the course of his or her work." (1 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (2d ed. 1993) § 3.101[3], p. 3-74.)

Rembold champions *Pruitt* v. *Workmen's Comp. App. Bd.* (1968) 261 Cal.App.2d 546 [68 Cal.Rptr. 12], the decision relied upon by the workers compensation judge. The university urges us to follow *Parsons* v. *Workers' Comp. Appeals Bd.* (1981) 126 Cal.App.3d 629 [179 Cal.Rptr. 88]. Although Rembold's out-of-custody status and changes in the Labor Code render these authorities suspect, we consider them briefly.

In *Parsons* the injured worker was convicted of a misdemeanor and sentenced to 45 days in jail, to be served at the rate of 2 days a week. While in custody, he was ordered to work in a county road camp kitchen pursuant to Penal Code section 4017 and the Tulare County ordinances authorized by that statute. The Court of Appeal succinctly explained, "the phrase 'labor on the public works' [in Penal Code section 4017] refers only to the type of labor which may be required of prisoners by the board of supervisors or city council; it does not mean such labor is covered by workers' compensation. Only firefighters or persons actively engaged in the prevention of fires shall be deemed employees for this purpose." (*Parsons* v. *Workers' Comp. Appeals Bd.*, *supra*, 126 Cal.App.3d at p. 634.) We agree with this analysis and conclusion that the inmate was not a county employee; and, if the case had been ours to decide, we undoubtedly would have ended the discussion at that point.

But the *Parsons* panel went further. It held, "the dispositive issue [was] whether [Parsons] was an employee of the county under the Labor Code provisions governing workers' compensation." (126 Cal.App.3d at p. 634.) The court then reviewed the three "C's" of employment status, observing, "The law clearly provides that the Labor Code section 3357's presumption of employee status is overcome if the essential contract of hire, express or implied, is not present under Labor Code section 3351. [Citations.] The traditional features of an employment contract are (1) consent of the parties, (2) consideration for the services rendered, and (3) control by the employer over the employee." (126 Cal.App.3d at p. 638.) The court conceded control, but found no consent or consideration. Its discussion of the latter point is pertinent to this case: "[the injured individual] received no consideration or legally cognizable benefit from his labor other than what he would have received had he served his time in jail, i.e., food and clothing. In our view, the privilege of working at the camp rather than being confined in the jail does not qualify as sufficient consideration to support an employment relationship. (Cf. *Pruitt* v. *Workmen's Comp. App. Bd.*, *supra*, 261 Cal.App.2d at p. 553.)" (*Id.* at p. 639.) This analysis is pertinent to this case; more of that anon.

*Pruitt*, on the other hand, described an informal relationship between the Nevada County jail and Nevada City whereby the city tapped willing county jail inmates as a source of cheap labor: Inmates who chose to participate in

the program were sent to a sewage plant with a county-provided sack lunch. The city paid them a carton of cigarettes a week for their labor, and the county reduced their sentences by five days for every thirty days worked.

Under the statutes then in effect, the Court of Appeal determined the injured county inmate, who was not working for the city under a Penal Code section 4017 mandate, was a city employee for the purposes of the Labor Code. While he "volunteered" for the work detail, he was not donating his services to the city; he was "paid" with cigarettes.[3]

*State Compensation Ins. Fund* v. *Workmen's Comp.App.Bd.* (1970) 8 Cal.App.3d 978 [87 Cal.Rptr. 770] (*Childs*) provides a helpful bridge between *Pruitt* and *Parsons*. It does, however, suffer from the same disability for our purposes as *Pruitt*; i.e., it was rendered before the effective date of Labor Code section 3363.5. (See fn. 3, *ante.*) The facts were as follows: David Childs was incarcerated in the Los Angeles County jail and injured[4] while working on a county road gang. He volunteered for the detail; and in return for his labor, the county sheriff's department issued him 50 cents in scrip per day, good for purchases at a county store apparently established at the jobsite for just that purpose. At the time, Los Angeles County had not enacted the ordinance authorized by Penal Code section 4017.

This omission was pivotal, as the Court of Appeal explained: "In *Pruitt*, because of the county ordinance, any labor performed on public projects for the county would not be voluntary. The inmate could not be an employee of that county. However, because of the fortuitous circumstance in that case that the prisoner was actually assigned to the city, it then became necessary to that court to determine the status of the applicant to the city. In considering the accuracy of the decision of the board as to the status of [the inmate] as 'an employee' the court followed the established test of examining the substance and the essence of the relationship between the applicant and the party sought to be charged as an employer. [Citation.] It properly found that the work was voluntary and that the service was performed for a gratuity.

---

[3]The subsequent enactment of Labor Code section 3363.5 in 1971 seemingly overturns the result in *Pruitt*. Under that provision, "a person who performs voluntary service without pay for a public agency" is not an employee within the meaning of the Labor Code unless the public agency has formally passed a resolution that designates its volunteers as employees. (Lab. Code, § 3363.5, subd. (a).) Subdivision (b) of this statute adds, " 'voluntary service without pay' shall include services performed by any person, who receives no remuneration other than meals, transportation, lodging, or *reimbursement for incidental expenses.*" (Italics added.)

[4]Smoking *is* unhealthy. Childs was injured when another inmate struck him with a shovel in a dispute over cigarettes.

Thus, an employer-employee relationship was established.[5] [¶] In the present case, in the absence of a county ordinance requiring inmates to perform such labor as incident to the incarceration it becomes necessary only to examine the relationship between the inmate and the county. We have already determined his work was voluntary. He performed a service in return for a gratuity, and in performing such service he was acting under the direct control and supervision of agents of the county. The meagerness of the compensation, of course, is not a factor in determining the nature of the relationship, although it does affect the amount of the benefit to be paid the employee. [Citations.] We thus find that the [inmate] was an employee of the County of Los Angeles at the time of his injury and entitled to benefits under the workmen's compensation law." (8 Cal.App.3d at pp. 982-983.)

To recap, the pertinent characteristics of *Pruitt*, *Parsons*, and *Childs* are as follows: In each the injured individual was a jail inmate. In *Parsons* he worked for the county under the compulsory provisions of Penal Code section 4017. In *Pruitt* the defendant volunteered to work for a public agency other than the one responsible for his incarceration and was compensated, though pathetically, for his efforts. In *Childs* the incarcerating county had not enacted the ordinance authorized by Penal Code section 4017, but provided volunteer inmates with work, also for picayune compensation.

By contrast, Rembold was not incarcerated. He had the option of paying a minimal fine or performing community service for a public entity other than the prosecuting agency. The community service was not compelled by statute, ordinance, or court order; and the university did not reward him with remuneration or any kind. In short, the characteristics of his work are more akin to those described in *Magana* v. *Workers' Comp. Appeals Bd.* (1990) 55 Cal.Comp.Cases 316 and *Liability for Criminal Defendant Performing Volunteer Service*, 61 Ops.Cal.Atty.Gen. 265 (1978). Though short on analysis, these authorities are helpful in resolving the question presented here.

*Magana* concerned an individual who performed community service for the City of Los Angeles "in lieu of payment for a traffic ticket." The workers' compensation judge found he was a municipal employee entitled to workers' compensation benefits for his injuries. The WCAB reversed the judge's decision, concluding there was no "consensual relationship [or] consideration. Although the [WCAB] did not find Magana to be a volunteer,

---

[5]This is where Labor Code section 3363.5 might change the analysis and result. Under that statute, the daily 50 cents scrip could reasonably be considered "reimbursement for incidental expenses." If so, the inmate's "voluntary service" would not have been converted into an employment contract that would have entitled him to workers' compensation benefits. (See fn. 3, *ante*.)

it found his service to have been mandatory, analogous to a jail sentence." (*Magana* v. *Workers' Comp. Appeals Bd.*, *supra*, 55 Cal.Comp.Cases 316.) The Court of Appeal summarily denied the injured worker's petition.

In *Liability for Criminal Defendant Performing Volunteer Service*, 61 Ops.Cal.Atty.Gen. 265, *supra*, the Attorney General addressed the situation "[w]here the superior court or municipal court gives a criminal defendant the option to perform a fixed number of hours of volunteer service for a public agency or private non-profit charitable organization in lieu of a jail sentence or fine." (*Id.* at pp. 265-266.) The first issue, the county's responsibility under workers' compensation laws for any injuries he or she may sustain, is not the issue here, of course: We are concerned with the university's potential liability. But in his discussion, the Attorney General reached a conclusion precisely on point: "The criminal defendant in such a situation would have the status of a 'volunteer.' Therefore, the county would not be liable for workers' compensation since no employer-employee relationship could exist. *The public entity or charitable corporation for whom the volunteer worked would be liable for workers' compensation [only] if [it] adopted the appropriate resolution provided for in sections* 3361.5, 3363.5, 3363.6 *or* 3364.5 *of the Labor Code.*" (*Id.* at p. 266, italics added.) We agree.

As the Attorney General reasoned, individuals in Rembold's circumstances receive no consideration that "could support an employer-employee relationship as to *any* entity, including the county."[6] (61 Ops.Cal.Atty.Gen., *supra*, at p. 268.) Depending on the crime and the criminal, a defendant who

---

[6]Along these lines, we disagree with the suggestion in *Barragan* v. *Workers' Comp. Appeals Bd.*, *supra*, 195 Cal.App.3d at page 649 that an individual's motive for "donating" services is determinative as to whether he or she is a volunteer. In *Barragan* a college student studying to become a medical assistant was required by her school to complete 160 hours in an externship program. She was injured during her externship in a hospital. The workers' compensation judge and WCAB found she was not an employee. The Court of Appeal annulled the order, concluding she was an employee as a matter of law. The court articulated three independent reasons for that determination. The first two are rather pedestrian: The hospital failed to establish that it was a nonprofit organization to which the exclusion of Labor Code section 3352, subdivision (i) applied; and the student was remunerated, in the form of instruction and skill enhancements.

We disagree, however, with the third justification. The Court of Appeal determined she was not a volunteer because she "did not gratuitously volunteer her services to the hospital out of the goodness of her heart. She did it in order to receive the on-the-job training necessary to get her diploma from Galen College. [Citation.] Petitioner's services were not charitably rendered to the hospital." (*Ibid.*) This reasoning appears flawed to us. It should not matter why an individual donates his or her services. The critical factor is whether the beneficiary and the donor perceive an employment relationship where the remuneration is something other than traditional lucre. Here, Rembold was not involved in a work rehabilitation

owes a debt to society may have several options: incarceration, payment of a fine, or performance of community service. Community service may be a more palatable means for some to pay the debt; but that does not mean "consideration," in the legal sense, has flowed from the beneficiary of the community service to the defendant. It also does not mean that the beneficiary accepts community service at a price, i.e., imposition of liability under the Labor Code for the volunteer's injuries.[7]

In short, vis-à-vis the university, Rembold was a "person performing voluntary service for a public agency . . . who receive[d] no remuneration for the services other than meals, transportation, lodging, or reimbursement for incidental expenses." (Lab. Code, § 3352, subd. (i).)

Rembold would only be entitled to workers' compensation benefits had the university previously adopted the resolution contemplated in Labor Code section 3363.5. Because the undisputed facts negate the presumption of an employment situation, a burden of proof held by the entity for whom the injured individual labored, the burden to produce evidence that a Labor Code section 3363.5 resolution had been passed was on the party asserting that it had. There has been no such claim here.

■ We also conclude that a criminal defendant performing community service in lieu of jail or a fine is not similarly situated to a workfare recipient. At issue in *Hoppmann* v. *Workers' Comp. Appeals Bd.* (1991) 226 Cal.App.3d 1119 [277 Cal.Rptr. 116] was the interpretation of Labor Code section 3352, subdivision (b), which excludes from the definition of "employee" those individuals "performing services in return for aid or sustenance only, received from any religious, charitable, or relief organization." There, a church paid a homeless man $5 an hour to work on a church construction project. He toiled alongside paid contractors, church volunteers, and other individuals in his own circumstances. Church authorities acknowledged no taxes were withheld and asserted they did not consider the worker to be an employee. When he was injured in a fall, the WCAB applied Labor

---

program; he was not seeking to learn a new trade. He was merely repaying his societal debt. The university accepted his services free of charge.

Moreover, in another context, the Supreme Court has held acceptance of probation conditions to be a voluntary act in that a convicted adult has the option of refusing probation. (*People* v. *Bravo* (1987) 43 Cal.3d 600, 609 [238 Cal.Rptr. 282, 738 P.2d 336].) "Voluntary" in the context of criminal sentencing, it seems to us, means something different from the ordinary meaning of the word. A choice between forms of punishments is considered voluntary in that lexicon.

[7]Whether the injured volunteer has a cause of action for common law tort liability is not before this court.

Code section 3352, subdivision (b) and held he was not an employee entitled to workers' compensation benefits.

The Court of Appeal reversed. The panel first distinguished the language in subdivision (b) of section 3352 ("Any person performing services in return for aid or sustenance only, received from any religious, charitable, or relief organization") with the wording of subdivision (i) ("Any person performing voluntary service for a public agency or a private, nonprofit organization who receives no remuneration for the services other than meals, transportation, lodging, or reimbursement for incidental expenses") and found the absence of the word "voluntary" in subdivision (b) significant. The court then concluded *County of Los Angeles* v. *Workers. Comp. Appeals Bd.* (1981) 30 Cal.3d 391 [179 Cal.Rptr. 214, 637 P.2d 681], the decision that reversed a series of Depression-era cases holding workfare recipients were not employees, compelled reversal.[8]

In sum, Labor Code section 3352, subdivision (i) excludes from the definition of employee "[a]ny person performing voluntary service for a public agency or a private, nonprofit organization who receives no remuneration for the services other than meals, transportation, lodging, or reimbursement for incidental expenses." Labor Code section 3363.5 confirms the nonemployee status of such volunteers by requiring a public agency to affirmatively act to transform the relationship into one of employer-employee. Once a public agency has established the voluntary nature of a worker's service, the injured individual must demonstrate entitlement to benefits per section 3363.5. As a matter of law, Rembold was a volunteer within the meaning of Labor Code section 3352, subdivision (i). Without any proof that the university had deemed its volunteers to be employees via a section 3363.5 resolution, he was not entitled to workers' compensation benefits from that entity.

---

[8]The appellate panel refused to distinguish church-sponsored workfare programs and those administered by public entities and was not impressed with the church's argument "that [the injured worker] 'bit the hand that fed him' and that he is responsible for the discontinuance of [c]hurch's charitable work program. One is tempted to observe that the hand that fed him did not go empty; [c]hurch got some 160 hours of work at $5 an hour in return for its alleged charity to petitioner. And as petitioner's attorney points out, the cost to [c]hurch of providing compensation insurance for an annual payroll of $5,000 would have been $553 in 1987 when petitioner was hired. If that cost sufficed to discourage [c]hurch's 'charity,' [c]hurch was easily discouraged. But whether or not charity is easily discouraged, the law confers employee status under the compensation act when an employment relationship in fact exists, and an employer cannot escape the obligations of such a relationship by characterizing his hiring of an employee as 'charitable,' by failing to report it to the Internal Revenue Service, or by paying below-scale wages. Where, as here, the normal incidents of an employment relationship [those three "C's"] are present, the concomitant legal obligations follow. We hold that there is coverage." (*Hoppmann* v. *Workers' Comp. Appeals Bd.*, *supra*, 226 Cal.App.3d at p. 1127.)

The decision of the WCAB to deny reconsideration of the university's petition is annulled, and the matter is remanded for further proceedings consistent with this opinion.

Sills, P. J., and Sonenshine, J., concurred.