[No. S039589. Apr. 24, 1995.]

LINDA ARRIAGA, Plaintiff and Appellant, v.
COUNTY OF ALAMEDA et al., Defendants and Respondents.

**COUNSEL**

Rufus L. Cole and Penelope S. Pahl for Plaintiff and Appellant.

William M. McMillan, Daniel C. Murphy, Thomas Lacchia and Renee Lias for Defendants and Respondents.

Norman Y. Herring, City Attorney (Culver City), Carol A. Schwab and Evelyn Keller, Deputy City Attorneys, and Laura D'Auri as Amici Curiae on behalf of Defendants and Respondents.

**OPINION**

**MOSK, J.**—The right to recover workers' compensation benefits is the sole and exclusive remedy of an employee against an employer for injury arising

out of and in the course of employment. (Lab. Code, §§ 3600, 3602.)[1] We granted review to resolve a conflict in decisions of the Courts of Appeal on the issue whether a person convicted of crime but not incarcerated, who undertakes to perform community service in lieu of paying a fine, is an employee within the meaning of the foregoing rule. After review we conclude that the opinion of the Court of Appeal herein, authored by Justice Ming W. Chin and concurred in by Presiding Justice Clinton White and Justice Robert W. Merrill, correctly holds that such a person is an employee for workers' compensation purposes. We adopt that opinion as the opinion of this court. The opinion, with appropriate deletions and additions, follows:*

Linda Arriaga appeals from a judgment dismissing her action for personal injury against respondents County of Alameda (County) and State of California (State). The trial court entered judgment after sustaining a demurrer to Arriaga's complaint without leave to amend. It sustained the demurrer because it found as a matter of law that Arriaga suffered her injuries in the course of employment with respondents, and therefore her exclusive remedy was under the Workers' Compensation Act (Act) (Lab. Code, § 3200 et seq.).[ ] Arriaga contends that the trial court's finding is erroneous. [ ] [[The Court of Appeal rejected the contention and affirmed the judgment. We shall affirm the judgment of the Court of Appeal.]]

### FACTUAL AND PROCEDURAL BACKGROUND

On January 4, 1993, Arriaga filed a complaint alleging a cause of action for negligence against respondents in connection with injuries she sustained on February 15, 1992. The complaint alleged liability based on the following facts: ". . . ARRIAGA was assigned by the Sheriff['s] Department for the . . . COUNTY . . . through the Department's Weekender Program to work for the Department of Transportation for [the] State . . . (hereinafter 'CAL TRANS'), as part of her sentence to work off a four year old speeding ticket. [Arriaga] was assigned by CAL TRANS to clean greasy walls of a ventilation duct deep inside the building over the Posey Tube connecting the city of Alameda to Oakland. [Arriaga] was required to work for several hours in the ventilation duct in an unsafe and dangerous environment. Specifically, [Arriaga] was left without supervision and without adequate warning or instruction concerning the hazards and risk associated with the use of the solvent

---

[1] All unlabelled code references hereafter are to the Labor Code.

*Brackets together in this manner [ ], without enclosed material, are used to denote our deletions from the opinion of the Court of Appeal; double brackets enclosing material are used to denote our additions. Footnotes in the Court of Appeal opinion that have been retained are sequentially renumbered.

she was provided by defendants. [Arriaga] was compelled to wash walls utilizing the solvent without ventilation or special respiratory equipment which defendants knew or should have known was dangerous to [her] physical, mental and emotional health. As a consequence of said actions, [Arriaga] was exposed to toxic fumes and experienced dizziness and lost consciousness."

Respondents demurred to the complaint on three grounds. They first argued that they were immune from liability under Government Code section 844.6, which provides that a public entity is not liable for an injury to a prisoner. They also argued that, because Arriaga was an employee under section 3351 at the time of her injury, her exclusive remedy was workers' compensation. Finally, they argued that, under Government Code section 815, they were not liable for general negligence, and that Arriaga had failed to allege a statutory cause of action. Arriaga opposed the demurrer, contending that she was not a prisoner within the meaning of Government Code section 844.6, that she was not an employee within the meaning of the workers' compensation laws, and that the alleged facts stated certain statutory causes of action. She therefore requested that the court overrule the demurrer or grant her leave to amend the complaint.

At the hearing on the demurrer, the court agreed that, under the alleged facts, workers' compensation constituted Arriaga's exclusive remedy. It therefore sustained the demurrer without leave to amend and entered a judgment dismissing the complaint. [[The Court of Appeal affirmed the judgment, and we granted review.]]

## DISCUSSION

This appeal turns on whether the [[courts below were]] correct in determining that workers' compensation is Arriaga's exclusive remedy. Ordinarily, ". . . a defendant in a civil action who claims to be one of that class of persons protected from an action at law by the provisions of the . . . Act bears the burden of pleading and proving, as an affirmative defense to the action, the existence of the conditions of compensation set forth in the statute which are necessary to its application. [Citations.]" (*Doney* v. *Tambouratgis* (1979) 23 Cal.3d 91, 96-97 [151 Cal.Rptr. 347, 587 P.2d 1160], fn. omitted.) However, when a complaint affirmatively alleges facts indicating that the Act applies, no civil action will lie, and the complaint is subject to a general demurrer unless it states additional facts that negate application of the exclusive remedy rule. (*Id.*, at p. 97; *Hughes* v. *Western MacArthur Co.* (1987) 192 Cal.App.3d 951, 957 [237 Cal.Rptr. 738].)

"An employer-employee relationship must exist in order to bring the . . . Act into effect. (§ 3600.)" (*County of Los Angeles* v. *Workers' Comp.*

*Appeals Bd.* (1981) 30 Cal.3d 391, 396 [179 Cal.Rptr. 214, 637 P.2d 681] [hereafter *Conroy*].)[2] However, the coverage of the Act extends beyond those who have entered into "traditional contract[s] of hire." (*Laeng* v. *Workmen's Comp. Appeals Bd.* (1972) 6 Cal.3d 771, 776 [100 Cal.Rptr. 377, 494 P.2d 1] [hereafter *Laeng*].) "[S]ection 3351 provides broadly that for the purpose of the . . . Act, ' "Employee" means every person in the service of an employer under any appointment or contract of hire or apprenticeship, express or implied, oral or written . . . .' " (*Laeng, supra*, at pp. 776-777, fn. omitted.) Given this "section's explicit use of the disjunctive," a contract of hire is *not* "a prerequisite" to the existence of an employment relationship. (*Id.*, at p. 777, fn. 5; see also *Conroy, supra*, at pp. 398, 402-403.) Moreover, under section 3357, "[a]ny person rendering service for another, other than as an independent contractor, or unless expressly excluded . . . , is presumed to be an employee."

■ "Given these broad statutory contours, . . . an 'employment' relationship sufficient to bring the [A]ct into play cannot be determined simply from technical contractual or common law conceptions of employment but must instead be resolved by reference to the history and fundamental purposes underlying the . . . Act [citations]." (*Laeng, supra*, 6 Cal.3d at p. 777, fn. omitted.) The purpose of the Act is to protect individuals against the special risks of employment. (*Id.*, at pp. 774, 782; *Conroy, supra*, 30 Cal.3d at p. 397.) "The Act intends comprehensive coverage of injuries in employment. It accomplishes this goal by defining 'employment' broadly in terms of 'service to an employer' and by including a general presumption that any person 'in service to another' is a covered 'employee.' [Citations.]" (*S. G. Borello & Sons, Inc.* v. *Department of Industrial Relations* (1989) 48 Cal.3d 341, 354 [256 Cal.Rptr. 543, 769 P.2d 399] [hereafter *Borello*].) Thus, ". . . the basic inquiry in compensation law involves which injuries *to* the employee should be insured against by the employer. [Citations.]" (*Laeng, supra*, 6 Cal.3d at p. 778, fn. 7.)

Applying these principles, [[this court]] in *Laeng* extended compensation coverage to a city job applicant who was injured "as part of a 'tryout' competition for the position of 'refuse crew worker,' " even though he "was concededly not an 'employee' of the city in a strict, contractual sense" at the time of the injury. (*Laeng, supra*, 6 Cal.3d at p. 774.) In reaching this conclusion, the court first found that the city received benefit from the applicant, in that his "efforts permit[ted] the employer to select workers who are likely to be better suited for the available position." (*Id.*, at p. 781.) It further found that the applicant was "in the 'service' of" the employer in that, ". . . during the tryout [he] subject[ed] himself to the employer's

---

[2]Real party in interest was Francis P. Conroy.

control, and the employer, in turn, assum[ed] responsibility for directing the applicant's activities." (*Id.*, at p. 782.) Finally, the court found that the applicant "incurred his injury while undertaking a 'special risk' of employment . . . ." (*Id.*, at p. 783.) Therefore, he qualified as an " 'employee,' " as that term must be understood "in light of . . . the [A]ct's purpose of protecting individuals from any special risks inherent in employment . . . ." (*Id.*, at p. 782.)

In *Conroy*, [[we]] reached a similar conclusion as to "workfare" recipients. There, Los Angeles County required Conroy to work as a watchman for a school district in exchange for general assistance. (*Conroy, supra*, 30 Cal.3d at p. 395.) Conroy sustained injury while working at a high school to which the school district had assigned him, and sought workers' compensation under the Act. (*Ibid.*) In opposing the application, Los Angeles County cited *McBurney* v. *Industrial Acc. Com.* (1934) 220 Cal. 124 [30 P.2d 414], which denied benefits to a "workfare" recipient "because . . . no contract of employment was present. [Citation.]" (*Conroy, supra*, at p. 397.) The *Conroy* court first observed that *McBurney* incorrectly "restricted the definition [of "employee"] to those situations where a contract for hire was present." (*Conroy, supra*, at p. 398, fn. omitted.) Then, applying "the principles of *Laeng*," it held that Conroy was an employee under the Act, reasoning: "[Conroy] was in the service of [Los Angeles] County when he was injured. He performed the job of watchman on the grounds of a school. . . . [He] subjected himself to [Los Angeles] County's control. [Los Angeles] County, though it did not directly supervise his day-to-day activities, exercised its right of control by assigning him to jobs. Also, [Los Angeles] County determined [his] rate of pay, specified the number of hours he was to work, and had the sole power to terminate his benefits if he did not perform his work to [its] satisfaction. [Los Angeles] County received a benefit from [his] work, which helped to ensure the safety of a school within [its] boundaries. Finally, by assigning [him] to work at the school, [Los Angeles] County exposed him to the same risks of employment faced by similar school employees." (*Conroy, supra*, at pp. 398-399, fn. omitted.)[3]

 Under *Laeng* and *Conroy*, we find that the allegations of Arriaga's complaint establish as a matter of law that she was an employee under the Act.[] She was doing maintenance work for the State Department of Transportation within the County's boundaries at the time of her injury. Thus, she

---

[3]In a footnote, the court also stated that *McBurney* "erred in concluding . . . that no contract of hire existed." (*Conroy, supra*, 30 Cal.3d at p. 398, fn. 4.) However, the court's principal holding was that Conroy was entitled to benefits regardless of the existence of such a contract, and the court expressly overruled *McBurney* as being "based on the erroneous notion that the essentials of a contract for hire are required under the . . . Act . . . ." (*Conroy, supra*, at pp. 402-403.)

was in the service of both the County and the State, and both entities received benefit from her work. She also was under the control of both the County, which had the power to assign her to a job through the weekender program, and the State, which assigned her to the particular task that she was performing at the time of her injury.[ ] Finally, Arriaga's assigned work in the ventilation duct exposed her to the same risks of employment that other transportation workers face. Therefore, we find that she was an employee of both the County and the State for workers' compensation purposes.[4]

In finding that Arriaga was an employee under the Act, we decline to follow *California State Univ., Fullerton* v. *Workers' Comp. Appeals Bd.* (1993) 16 Cal.App.4th 1819 [21 Cal.Rptr.2d 50] (hereafter *Fullerton*). There, after Rembold was convicted of a criminal offense, the court assessed a fine and provided in his probation order that the fine would be forgiven if he completed 78 hours of community service. (*Id.*, at p. 1821, fn. 1 and accompanying text.) Rembold chose community service, and sustained injury while working as a groundkeeper on the campus of California State University, Fullerton (University). (*Id.*, at p. 1821.) The court concluded that Rembold was not an employee under section 3351, but was a volunteer under section 3352, subdivision (i). (*Fullerton, supra,* at p. 1827.) That section excludes from the definition of employee "[a]ny person performing voluntary service for a public agency or a private, nonprofit organization who receives no remuneration for the services other than meals, transportation, lodging, or reimbursement for incidental expenses." (§ 3352, subd. (i).) The court reasoned that ". . . individuals in Rembold's circumstances receive no consideration that 'could support an employer-employee relationship as to *any* entity . . . . [Citation.] Depending on the crime and the criminal, a defendant who owes a debt to society may have several options: incarceration, payment of a fine, or performance of community service. Community service may be a more palatable means for some to pay the debt; but that does not mean 'consideration,' in the legal sense, has flowed from the beneficiary of the community service to the defendant." (*Fullerton, supra,* at pp. 1826-1827.) Given its conclusion that Rembold was a volunteer under section 3352, the court held that he could obtain compensation

---

[4]As between the County and the State, the situation is similar to that in *Conroy*. There, the court held that Los Angeles County was Conroy's general employer because it assigned Conroy to the school district, but retained the right to control other aspects of his work: "whether to accept him as a worker, where to assign him, and whether to discharge him." (*Conroy, supra,* 30 Cal.3d at p. 406.) The school district was the special employer; it "supervised [his] day-to-day activities as a watchman." (*Ibid.*) Here, the County was the general employer and the State was the special employer. As to both, workers' compensation constitutes Arriaga's exclusive remedy. (*McFarland* v. *Voorheis-Trindle Co.* (1959) 52 Cal.2d 698, 702 [343 P.2d 923].)

benefits from the University only if it "adopted the resolution contemplated in . . . section 3363.5."[5] (*Fullerton, supra,* at p. 1827.)

We find *Fullerton* unpersuasive.[6] As set out above, section 3352, subdivision (i), applies only if the person seeking compensation is "performing voluntary service." We do not believe that persons who perform work pursuant to a court order are performing "voluntary service" within the meaning of this section, even if the order permits them to pay a fine instead of working. As generally understood, the term "voluntary" at minimum "means an exercise of will, i.e., it 'implies freedom from any compulsion that could constrain one's choice.' [Citation.]" (*Moyer* v. *Workmen's Comp. Appeals Bd.* (1973) 10 Cal.3d 222, 231 [110 Cal.Rptr. 144, 514 P.2d 1224]; see also *Flynn* v. *San Francisco* (1941) 18 Cal.2d 210, 217 [115 P.2d 3] [payments were not voluntary where their "motivating cause . . . was fear of infliction of the penalties outlined in the coercive provisions" of ordinance].) Thus, in *Edwards* v. *Hollywood Canteen* (1946) 27 Cal.2d 802, 806-807 [167 P.2d 729], the [[court]] explained that ". . . a citizen compelled by a sheriff to act as a deputy is not a 'volunteer,'" and therefore may obtain workers' compensation. [[*County of Monterey* v. *Industrial Acc. Com.* (1926) 199 Cal. 221 [248 P. 912, 47 A.L.R. 359]; accord, *Argonaut Ins. Co.* v. *Industrial Acc. Com.* (1960) 54 Cal.2d 740 [8 Cal.Rptr. 438, 356 P.2d 182] (citizen commandeered to fight a forest fire (see Pub. Resources Code, §§ 4153, 4436) was deemed a governmental employee within the meaning of the Act).]] Similarly, we find that a person who works in order to comply with a court order to pay a fine or work is not acting free of compulsion, and therefore is not "performing voluntary service" within the meaning of section 3352, subdivision (i).

Nor do we agree that such a person "receives no remuneration for the services other than meals, transportation, lodging, or reimbursement for incidental expenses." (§ 3352, subd. (i).) As *Fullerton* recognizes, "remuneration" for purposes of section 3352, subdivision (i), need not be in monetary form. (*Fullerton, supra,* 16 Cal.App.4th at p. 1826, fn. 6.) Thus, in *Barragan* v. *Workers' Comp. Appeals Bd.* (1987) 195 Cal.App.3d 637, 650 [240

---

[5]Section 3363.5, subdivision (a), provides: "Notwithstanding Sections 3351, 3352, and 3357, a person who performs voluntary service without pay for a public agency, as designated and authorized by the governing body of the agency or its designee, shall, upon adoption of a resolution by the governing body of the agency so declaring, be deemed to be an employee of the agency for purposes of this division while performing such service."

[6]Because we find that Arriaga was not a volunteer under section 3352, subdivision (i), we need not decide whether respondents have complied with section 3363.5, subdivision (a), by adopting a resolution declaring her to be an employee. Therefore, we deny [[Arriaga's]] request for judicial notice of a 1983 agreement between the County and the State relating to "referral work volunteers," and a County resolution authorizing execution of the agreement.

Cal.Rptr. 811], the court found that "a worker who receives instruction and training designed to provide the worker with a skill" receives remuneration and therefore is not a volunteer under that section. Here, in exchange for her work, Arriaga received credit against the court-imposed fine. She thus received remuneration sufficient to render section 3352, subdivision (i), inapplicable.[7]

■ Our conclusion comports with the Legislature's command in section 3202 that the Act "be liberally construed by the courts with the purpose of extending [its] benefits for the protection of persons injured in the course of their employment."[ ] This command governs all aspects of workers' compensation; it applies to factual as well as statutory construction. (*Kerley* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 223, 227 [93 Cal.Rptr. 192, 481 P.2d 200]; *Gross* v. *Workmen's Comp. Appeals Bd.* (1975) 44 Cal.App.3d 397, 402 [118 Cal.Rptr. 609].) Thus, "[i]f a provision in [the Act] may be reasonably construed to provide coverage or payments, that construction should usually be adopted even if another reasonable construction is possible." (*Department of Corrections* v. *Workers' Comp. Appeals Bd.* (1979) 23 Cal.3d 197, 206 [152 Cal.Rptr. 345, 589 P.2d 853].) The rule of liberal construction "is not altered because a plaintiff believes that [she] can establish negligence on the part of [her] employer and brings a civil suit for damages." (*Freire* v. *Matson Navigation Co.* (1941) 19 Cal.2d 8, 10 [118 P.2d 809].) It requires that we liberally construe the Act "in favor of *awarding work[ers'] compensation*, not in permitting civil litigation. [Citation.]" (*Dixon* v. *Ford Motor Co.* (1975) 53 Cal.App.3d 499, 506 [125 Cal.Rptr. 872]; see also *Machado* v. *Hulsman* (1981) 119 Cal.App.3d 453, 455-456 [173 Cal.Rptr. 842] [Act must "be liberally construed in favor of the application of . . . benefits [citations] even where it might be to the advantage of a particular plaintiff to avoid them and seek a remedy at law"].)

■ Our conclusion also comports with the statutory history surrounding section 3301. Subdivision (b) of that section excludes from the definition of " 'employer' " under the Act "[a]ny private, nonprofit organization while acting solely as the sponsor of a person who, as a condition of sentencing by a superior or municipal court, is performing services for the organization." (§ 3301, subd. (b).) The Finance, Insurance, and Commerce Committee, whose chairman authored the amendment that added subdivision (b) to section 3301, provided the following analysis: "Quite often, a person convicted of a minor crime is given the opportunity of performing a certain amount of public service in lieu of a jail sentence. The sentence is normally

---

[7] If, in exchange for her work, Arriaga had received money with which to pay her fine, she unquestionably would have received sufficient remuneration. The same result must obtain in this case, where Arriaga simply received credit against the fine instead.

satisfied by performing services under the sponsorship of a private nonprofit organization. A question has been raised as to whether these convicts are employees of the private nonprofit organization while performing these services. Since these individuals are not technically inmates, they are not eligible for workers' compensation under . . . Section 3370 *nor are they 'volunteers' and thereby excluded under Sections 3363.5 or 3363.6.* Accordingly, the purpose of the amendment is to clarify that they are not employees of the sponsoring private nonprofit organization." (Finance, Ins., and Commerce Com., Summary and Analysis of Assem. Bill No. 44 (1981-1982 Reg. Sess.) Jan. 27, 1981, p. 2, italics added.) The Legislature's belief that persons who perform service in lieu of a jail sentence are not volunteers under the Act, and its enactment of an express exclusion for private, nonprofit organizations that receive such service, supports our conclusion that Arriaga is not a volunteer under section 3352, subdivision (i). [[That exclusion would be superfluous if the persons it refers to were also excluded from the Act by section 3352, subdivision (i).[8]

[ ] [[End of Court of Appeal opinion.]]

Arriaga contends she was not an employee within the meaning of the Act because she was not a "worker whose services form a regular and continual part of the cost of [the] product" of her employer. The point lacks merit. As shown by the decisions in *Laeng, supra,* 6 Cal.3d 771, and *Conroy, supra,* 30 Cal.3d 391, the Act protects more than traditional industrial workers; it also extends to persons who, like Arriaga, are under an employer's direction and control and whose services both benefit the employer and expose them to the same risks of employment as traditional workers.

Arriaga further stresses she received no consideration from respondents in the form of wages or monetary equivalents known as "fringe benefits."

---

[8]The result of this statutory scheme, admittedly, is that the workers' compensation rights of a person who elects to work in lieu of paying a fine turn on the nature of the entity, if any, to which the county assigns that person. In all cases the county will remain liable for workers' compensation because it is the "general employer." (See fn. 4, *ante.*) If the county, as here, assigns the person to work for another public entity, the latter will also be liable for workers' compensation because it is a "special employer." (*Ibid.*) But if the county assigns the person to work for a private nonprofit organization, that organization will not be liable for workers' compensation because the statute (§ 3301, subd. (b)) specifically exempts it from employer status.

Although no party makes an issue of this distinction, it is not difficult to conceive of a rational basis for it. To deny such a person the right to sue the public entity at law supports the sovereign immunity provisions of the California Tort Claims Act (Gov. Code, § 810 et seq.); conversely, to relieve the private nonprofit organization of the expense of workers' compensation insurance encourages such organizations to provide community service programs of the type now before us.]]

■ But as noted in *Laeng, supra,* 6 Cal.3d at page 777, footnote 5, "Contrary to the . . . suggestion, California work[ers'] compensation law does not require that an applicant be receiving actual 'compensation' for his 'services' in order to fall within the work[ers'] compensation scheme."

■ Here, as explained above, Arriaga was not a true volunteer: for her services she received the valuable benefit of forgiveness of her criminal fine. Thus "[t]he present case . . . is not one in which the applicant can be said to have 'gratuitously' volunteered [her] services . . . as was true of the volunteer canteen hostess in *Edwards* v. *Hollywood Canteen*[, *supra,* ] 27 Cal.2d 802 [167 P.2d 729], who was injured while dancing with a boisterous soldier." (*Laeng, supra,* 6 Cal.3d at p. 777, fn. 5.)

Arriaga also asserts that she did not "consent to an employment relationship" with respondents. In the present context, however, the question is not whether Arriaga consented to the employment relationship but whether she was a "volunteer" within the meaning of the Act. The difference is illustrated by the case on which Arriaga relies, *Kowalski* v. *Shell Oil Co.* (1979) 23 Cal.3d 168 [151 Cal.Rptr. 671, 588 P.2d 811]. That case is not in point because it dealt solely with the question when, in a civil setting, an employee of one company is also a "special employee" of another company.[9] The same question arises even more commonly when an employee of a subcontractor is injured on the job site of the prime contractor. But here the issue is narrower, i.e., whether a person convicted of crime but not incarcerated who undertakes to perform community service in lieu of paying a fine is an employee (§ 3351) or a volunteer (§ 3352, subd. (i)) within the meaning of the Act. That issue is governed by the considerations we discuss in this opinion.[10]

The judgment of the Court of Appeal is affirmed.

---

[9]In the cited case, Thomas Kowalski, an employee of a company that contracted to do maintenance work on the premises of another (Shell), was injured on the job. Kowalski sued Shell for damages. The jury returned a verdict finding that Kowalski was not a special employee of Shell and that Shell was liable to him in damages. The court entered a judgment notwithstanding the verdict, ruling that Kowalski *was* Shell's special employee and hence Kowalski's exclusive remedy was in workers' compensation. The sole issue on appeal was whether the evidence was sufficient to support the jury's finding of lack of a special employment relationship. We reviewed eight factors that generally bear on that question, e.g., the right to control, right to discharge, nature and duration of the work, source of the tools and equipment, etc. (23 Cal.3d at pp. 176-178.) One of these factors was whether the worker had expressly or impliedly consented to the special employment relationship. (*Id.* at p. 178.) We found that under all the factors there was substantial evidence to support the finding that Kowalski was not Shell's special employee, and therefore reversed the judgment. (*Id.* at pp. 178-179.)

[10]Likewise distinguishable are *Rowland* v. *County of Sonoma* (1990) 220 Cal.App.3d 331 [269 Cal.Rptr. 426], *Morales* v. *Workers' Comp. Appeals Bd.* (1986) 186 Cal.App.3d 283 [230 Cal.Rptr. 575], *Parsons* v. *Workers' Comp. Appeals Bd.* (1981) 126 Cal.App.3d 629 [179 Cal.Rptr. 88], *State Compensation Ins. Fund* v. *Workmen's Comp. App. Bd.* (1970) 8

Lucas, C. J., Kennard, J., Arabian, J., Baxter, J., George, J., and Werdegar, J., concurred.

---

Cal.App.3d 978 [87 Cal.Rptr. 770], and *Pruitt* v. *Workmen's Comp. App. Bd.* (1968) 261 Cal.App.2d 546 [68 Cal.Rptr. 12]. In each of those cases the person injured was, unlike Arriaga, a county jail inmate at the time of the injury. (Cf. § 3351, subd. (e) [state prison inmates doing assigned work are deemed employees].) In addition, the circumstances under which each inmate was working at the time of the injury differed widely from case to case and from the case at bar, and the decisions reached different results accordingly. We therefore have no occasion to determine whether these decisions are consistent with the Act; indeed, Arriaga does not rely on any of them.

Because we hold that workers' compensation constitutes Arriaga's exclusive remedy, we need not determine whether respondents are immune under Government Code section 844.6 or whether Arriaga's complaint stated sufficient facts to allege a statutory cause of action.

For the reasons stated we disapprove *California State Univ., Fullerton* v. *Workers' Comp. Appeals Bd., supra,* 16 Cal.App.4th 1819.